**WASHINGTON NAT. INS. CO. v. CURRY.**

No. 12007.

Court of Civil Appeals of Texas. Dallas.

Sept. 26, 1936.

Rehearing Denied Oct. 31, 1936.

Geo. E. Hughes, of Dallas, for appellant.
H. C. Ford and White & Yarborough, all of Dallas, for appellee.

BOND, Justice.

Appellee, Sam Curry, filed this suit against appellant, Washington National Insurance Company, to recover on an insurance policy, which, by its terms, creates a liability of the company to pay to appellee $10 weekly benefits for a term of 104 weeks, (a) for each day the insured is by reason of illness under the care of a physician and necessarily confined to bed, or

(b) for each day the insured is by reason of accidental injury, of which there is external evidence, disabled from performing work of any nature; provided in each case (a) and (b) such confinement or disability is not less than 4 consecutive days and a certificate by a duly licensed and practicing physician is furnished as required by the policy. The policy requires that: "The insured shall not be entitled to any benefits for sickness or accident under this policy unless a certificate on the Company's form by a regularly licensed and practicing physician who is satisfactory to the Company, showing the nature of the sickness or injury, shall first be furnished the Company or its authorized agents; and if the sickness or accidental disability of the insured shall continue for more than one week, a like certificate must likewise be furnished at the beginning of each week of sickness or accidental disability."

Appellee alleged that he sustained an accidental injury on or about July 7, 1930, by getting creosote in his eyes, resulting in a diseased condition which totally destroyed his vision, of which there was external evidence, and on account of which he was disabled from performing work of any nature, was continuously confined to his bed since the date of his injury, and was totally and permanently incapacitated to work; and that he requested of the insurance company forms for making the certificates, as required by the policy, and the company refused to furnish such forms, thus waiving the requirements of the policy as to furnish certificates of a duly licensed and practicing physician.

The case was submitted to a jury on special issues, and its verdict, in effect, finds that Sam Curry on or about July 7, 1930, got creosote in his eyes, resulting in blindness within 30 days thereafter, of which there was external evidence, which totally disabled him to perform work or labor, and necessarily and continuously, from that date, confined him to his bed; that Sam Curry gave notice to the insurance company of his disability, and on July 7, 1930, applied for and demanded of the company blanks for the purpose of making the proof of his disability, as required by the policy, which application and demand was refused by the company. On the verdict, the court rendered judgment for the weekly benefits, with statutory penalty and attorney fees.

■ The appellant, by pleadings and evidence, controverts the issues and the findings of the jury, and we are of the opinion that the findings of the jury are supported by appellee's evidence and adopt same for the purpose of this opinion as the findings of this court. The disposition we make of this appeal makes it unnecessary to relate the testimony bearing on the findings.

It will be observed from the findings of the jury that the issues bear evidence only of an accidental injury to appellee, resulting in his disability from performing work of any nature; and not by reason of illness "under the care of a physician and necessarily confined to bed." As we interpret the policy, the provision "under the care of a physician and necessarily confined to bed" are conditions precedent for the payment of benefits for disabilities by reason of illness and not for benefits due to accidental injury.

As explanatory of the provisions of the policy affecting disability by reason of illness, the trial court gave the following instructions: "You are instructed that by the term 'necessarily, totally and continuously confined to bed', as used in the Court's charge and the policy sued upon herein, does not mean, a constant literal restraint within the plaintiff's bed, or the taking of exercise, and sitting in the sunshine as a part of plaintiff's treatment, would not mean that he was not at such times necessarily confined to the bed as contemplated by the policy or contract in evidence in this case."

■■ It is clear, we think, that this explanatory provision of the charge has weight only on issues which might be submitted to the jury effecting liability by reason of illness. The illness disability provision of the policy is conditioned, among other things, that the insured shall be "under the care of a physician and necessarily confined to bed." The clause "confined to bed" in such cases must not be given a literal construction. It is evident, we think, that the clause means that, the disability by reason of illness must reach that extent and be that severe, as ordinarily the party afflicted would be confined to bed. The term "confined to bed" evidently depicts only the extent of the illness, an evidentiary condition, and should not be literally applied by a court or jury. So, on the issue of disability by reason of illness, we think the explanatory charge would have been proper; but, as we view this record, appellant's liability, if any, rests on appellee's disability due to accidental injury to

his eyes, which disabled him from performing work of any nature. There is not sufficient evidence of illness of the insured, or that the insured was "under the care of a physician and necessarily confined to bed," as to come under the conditions precedent for appellee's recovery therefor; and for that reason the charge, though correct in form, should not have been given on issues arising from pleadings and evidence of disabilities by reason of accidental injury. The policy does not require the insured to be "confined to bed" as a condition precedent for disability benefits due by reason of accidental injury.

On the trial appellee, in proof of his allegations that the extent of his injuries produced blindness, offered in evidence, over appellant's objections, the testimony of Dr. Fred Wyatt to the effect that he examined appellee's eyes in May, 1934, 2 years after the alleged accidental disability occurred, and he found appellee was totally blind resulting from glaucoma; that he could not determine how long this condition had lasted, but evidently for many months or years; and, that his condition was chronic, and during this time his eyesight became gradually dimmer and finally produced blindness. We think the testimony was admissible.

It is settled rule in this state that any fact or circumstance logically related to any issue in the case, either directly or by inference, which conduces to any reasonable degree to establish the probability of that issue, should go to the jury. Gulf, C. & S. F. Ry. Co. v. Downs (Tex. Civ.App.) 70 S.W.(2d) 318. Sam Curry and his wife, Delia Curry, testified that in July, 1930, appellee had the accident of getting creosote into his eyes, which produced external evidence of inflammation, swelling, pain, and excess flow of fluid, which resulted gradually in the total loss of his eyesight. The related symptoms, Dr. Wyatt's testimony reveals, causes glaucoma, which would finally and gradually cause blindness, thus disabling the one afflicted from performing any kind of work. The weight of Dr. Wyatt's testimony necessarily rests upon the reasons given by the other witnesses in support of his testimony. Our conclusion, therefore, is that there was no error of the trial court in admitting the testimony of Dr. Wyatt, notwithstanding, it relates to appellee's condition two years after the alleged accident. It is not essen-

tial to the admissibility of testimony that it relates to the exact time in question, but testimony as to conditions existing before or after such time is admissible where it has a direct relation to the main subject in controversy.

Appellant assigned error on the action of the court in permitting Delia Curry, wife of appellee, to testify that she and her husband were poor people and had no money to employ doctors or buy medicine for the treatment of appellee's eyes after the accidental injury occurred, and that the insurance company did not furnish a doctor to treat him. Also assigns error in permitting appellee to testify pretty much to the same effect as the testimony of his wife, Delia Curry. The question of appellee's financial condition evidently had no bearing whatever on his right to recover. His suit was based on a written contract and the issues involved were his disability from sickness or accident and the attending circumstances, for which the company was liable under the terms of the policy. If he came within the terms, he was entitled to recover, regardless of his financial condition; otherwise, he was not. It is generally held that: "Where improper testimony in its nature calculated to prejudice is permitted, the appellate court must presume that harm resulted therefrom, unless it affirmatively appears from the record that it did not." 3 Tex.Jur. p. 1257. So, in this case, we think the testimony in question was clearly improper, and calculated to prejudice the rights of the insurance company; and, since the record does not appear that the testimony did not result in harm to the appellant, we conclude that the assignment presents reversible error.

Appellant also assigns error on the action of the court in permitting the introduction of portions of numerous letters written by the attorney for appellee to the appellant, depicting appellee's injury, the extent thereof, and how his condition had become progressively worse, and the manner in which appellee had been treated by the defendant and its agent. Illustrating the context of the various letters objected to, one of them recited that: "About two years ago he (appellee) sustained an injury to his eyes and his eyes gradually grew worse until he is now almost totally blind. He has been totally disabled from work for nearly two years. Your agent continued to collect his premiums on this

policy until on or about the second week in January, 1932. This party tried several times during the past two years to get blanks from your agent to have filled out and the agent refused to give him any blanks. He lost his policy and gave your agent ten cents to get him a duplicate policy but, he did not get it for him. The agent quit collecting on this party and finally worked this party out of his policy." Another letter recited: "This party tells me that he was treated at the Baylor Hospital more than one year ago and, that he had been treated at the Parkland Hospital several times this year." The other letters contain similar expressions. We think there is no use in discussing the question that the unsworn and hearsay testimony of the writer, reflected in the letters above mentioned, was not admissible for any purpose whatever. The writer of the letters was not under oath when the letters were written; the letters are manifestly hearsay and relate to material controverted issues of fact involved in the suit. We are of the opinion that the objectionable parts of the letters reciting appellee's injury, the condition resulting therefrom, and the acts and conduct of appellant and its agent should have been excluded; their admission was calculated to prejudice the rights of appellant and influencing the jury in favor of appellee.

Appellant presents other assignments of errors, which we have considered in view of another trial of this cause; they are without merit.

For the reasons stated, the judgment of the trial court must be reversed and the cause remanded for another trial.

Reversed and remanded.