Truman PALMER, Appellant,

v.

MILLER BREWING COMPANY, Appellee.

No. 2–92–184–CV.

Court of Appeals of Texas, Fort Worth.

April 6, 1993.

Rehearing Overruled May 18, 1993.

George Busch, Fort Worth, for appellant.

Edward L. Kemble, Clay D. Humphries, Cantey & Hanger, LLP, Fort Worth, for appellee.

Before FARRIS, HICKS and HOPKINS (Retired Sitting by Assignment), JJ.

## OPINION

HOPKINS, Justice.

Appellant, Truman Palmer, sued appellee, Miller Brewing Company, for retaliatory discharge and breach of good faith and fair dealing. The trial court granted a partial summary judgment and a take-nothing judgment on Miller's behalf. Palmer appeals both of these rulings.

We affirm.

Palmer was discharged on September 9, 1989, after working for Miller for seventeen years. Previously, Miller had placed Palmer under its "Final Notice Procedure" because of his high absence rate. Under this procedure, his absence rate, other than vacations, holidays, and hospitalized absences, was to be monitored for an entire year. If his absence rate exceeded three times those of the average employee's or nine percent during any thirteen week period, whichever was less, he was subject to termination. Miller notified Palmer that he was placed on this procedure. Further, Mike Pavlos, who worked in Miller's labor-relations department, testified that a letter was read to Palmer which advised him that he was placed on the "Final Notice Procedure" and informed him what this entailed.

Initially, Palmer did well on this program. However, during the thirteen week period from June 4, 1989 through September 2, 1989 he missed five days. Although Palmer had doctors' excuses and was paid sick leave for all but one of those days, they were counted against him. This brought his absence rate over both three times the employee average and nine percent.

When Palmer was informed that he would be terminated because of this absence rate, he told Miller's agent that his absences were caused by a job-related back injury. This injury occurred on March 29, 1989 and was documented in Miller's accident report. Despite this, Palmer was terminated.

On August 17, 1990, Palmer sued Miller for discharging him in retaliation for instituting a worker's compensation claim and for failing to exercise good faith and fair dealing. Before trial, Miller moved for a partial summary judgment, claiming that it had no implied duty to exercise good faith and fair dealing in terminating an at-will employment relationship and that it was under no contract with Palmer which gave it this duty. The trial court granted this motion for partial summary judgment.

At a bench trial, Palmer testified that the back injury was caused by work and he submitted a doctor's note which states that his back injury is a "progressive lower back disorder" aggravated by his physical job requirements. Pavlos claimed that he knew nothing about a compensation claim or that Palmer had taken sick leave because of a job-related injury. Palmer agreed that Pavlos did not know, but he claimed that Miller knew because doctors'

excuses for his absences were accepted by the company and the injury was reported to Miller's medical department. The doctors' excuses were marked "RECEIVED" by the medical department; they state that Palmer was unable to work due to back pain.

After trial on the claim of wrongful discharge, the court granted a take-nothing judgment for Miller. In its findings of fact and conclusions of law, the court found that Palmer was discharged solely because of his excess absences and Miller's motive was unrelated to Palmer's worker's compensation claim. It concluded as a matter of law that Miller did not violate the retaliatory discharge statute and dismissed Palmer's claims with prejudice.

Palmer brings eleven points of error. We review these points in their logical order. Under his first, second, fourth, and sixth points, he claims the trial court erred: in failing to find that Palmer reported his absences, furnished medical excuses for those absences and that they were counted against him; in finding that he was terminated solely because of excessive absences; and in placing upon him the burden of disproving that his termination was solely caused by excessive absences. He argues in points seven, eight, nine, and ten that the trial court erroneously: failed to find that Miller's absence policy did not provide for absences occasioned by job-related injuries; found that Miller's motive in discharging him was unrelated to his filing a worker's compensation claim; and found that this did not discriminate against him in violation of article 8307c.

Next, Palmer argues that the court erred in its evidentiary rulings. Under his third point of error he argues that the trial court's admission of exhibits 16 through 48 was error because of their prejudicial nature and because the union contract prohibited Miller's review of these records in determining to discharge Palmer. In his fifth point of error, he argues that the court erroneously restricted his right to cross-examine in order to show discrimination. Finally, in his eleventh point of error, he argues that the trial court erroneously granted partial summary judgment be-

cause Miller had a duty of good faith and fair dealing.

Points of error one, two, four and six through ten are overruled because the retaliatory discharge statute is not per se violated by an absence control policy which does not exclude compensation-related absences. Point of error three is overruled because the trial court did not abuse its discretion with its evidentiary rulings. Point of error five is overruled because Palmer did not preserve the alleged error. Point of error eleven is overruled because employers do not have an implied duty of good faith and fair dealing in terminating an at-will employment relationship and because no contract imposes such a duty on Miller in this case.

## RETALIATORY DISCHARGE

Grouping together points one, two, four, and six through ten, appellant argues the evidence shows he was discharged in retaliation for taking steps to collect his worker's compensation benefits, in violation of TEX.REV.CIV.STAT.ANN. art. 8307c (Vernon Pamph.1993). It states:

No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or cause to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.

*Id.*

Texas courts have liberally construed this article in order to protect and uphold the purpose for which it was enacted. The purpose of article 8307c is "to protect persons who are entitled to benefits under the Worker's Compensation Law and to prevent them from being discharged by reason of taking steps to collect such benefits." *Carnation Co. v. Borner*, 610 S.W.2d 450, 453 (Tex.1980) (quoting *Texas Steel Co. v. Douglas*, 533 S.W.2d 111, 115 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.)). Thus, courts hold that article 8307c can be violated even when the employee was fired before filing a claim for

compensation so long as the evidence shows that the employee took steps towards instituting a compensation proceeding. *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 84 (Tex.App.—El Paso 1992, no writ); *Mid–South Bottling Co. v. Cigainero*, 799 S.W.2d 385, 389 (Tex.App.—Texarkana 1990, writ denied). The act of informing the employer of the injury sufficiently institutes a compensation proceeding and when this action is shown there is a fact question as to whether there is a causal connection between the compensation proceeding and termination. *Cigainero*, 799 S.W.2d at 389; *Hunt v. Van Der Horst Corp.*, 711 S.W.2d 77, 80 (Tex.App.—Dallas 1986, no writ). The employee has the burden of establishing this causal link, then the employer must rebut the allegations by showing a legitimate reason for the discharge. *Investment Properties Mgt. v. Montes*, 821 S.W.2d 691, 694 (Tex.App.—El Paso 1991, no writ); *Hughes Tool Co. v. Richards*, 624 S.W.2d 598, 599 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), *cert. denied*, 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982).

■ Circumstantial evidence can prove the causal connection. *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654, 658 (Tex.App.—El Paso 1989, writ denied). Such evidence includes: 1) knowledge of the claim by those making the decision to terminate; 2) a negative attitude toward the employee's injured condition; 3) failure to follow company policy when disciplining an employee who made a claim; and 4) discriminatory treatment of this employee when compared to the treatment of other employees with this same disciplinary problem. *Id.*

■ In this case, Palmer sufficiently instituted a compensation proceeding by informing Miller's medical department of his injury. However, the circumstantial evidence is insufficient to prove the necessary causal connection. First, the uncontroverted evidence was that Pavlos did not know that the absences were caused by a job-related injury until after the decision to terminate had been made. The company records reviewed by Pavlos when he made the decision to terminate indicated that the absences were taken for sick leave instead of a job-related injury. Next, there was no evidence of a negative attitude on Miller's part towards employees' injured conditions. In fact, Palmer testified that Miller was very good about putting employees on light duty when they complained of injury. Miller's economic expert testified that from 1988 to 1991, over 300 different employees filed compensation claims and only three of those were discharged, less than one percent. There was no evidence that Miller failed to follow its "Final Notice Procedure" because non-hospitalized absences are counted against all employees being monitored under the procedure. There was no evidence that Miller treated other employees in Palmer's position any differently than they treated him. The only evidence Palmer produced to prove the causal connection is the fact that the company used its absence control policy at a time when Palmer was taking sick leave for back pain which was allegedly caused by a job-related injury.

■ Palmer claims that the causal link is established by the policy because it makes no allowances for absences based upon job-related injuries. He specifically argues that his "injury on the job required his absence from work and as such should have been protected under Article 8307c."

Whether this type of absence control policy per se violates article 8307c is a question of first impression for Texas courts. However, the fifth circuit has concluded that this type of absence control policy does not per se violate article 8307c, even when there is evidence that the employee instituted a proceeding under the act. *Swearingen v. Owens–Corning Fiberglas Corp.*, 968 F.2d 559, 564 (5th Cir.1992). In *Swearingen*, an employee sustained a job-related injury and could not return to work for four years, so she filed for and received worker's compensation benefits. *Id.* at 560. After the second year of her absence, she was terminated for violating an absence control policy. *Id.* She sued her employer, claiming that it violated article 8307c. *Id.* The fifth circuit disagreed and

upheld a summary judgment because the employee admitted that she could offer no circumstantial evidence of a causal link other than the fact that the company's absence control policy was applied to her when she was off work because of her job-related injury and when she was drawing worker's compensation. *Id.* at 563. The court found that article 8307c does not safeguard employees who violate a neutrally applied absence control policy. *Id.* Even so, the court stated that an employer could violate article 8307c by terminating an employee under an absence control policy if the termination were tainted by the "presence of an illegitimate, retaliatory motive." *Id.* at 564.

We hold that the use of an absence control policy which does not excuse compensation related absences does not per se violate article 8307c. We agree with the fifth circuit that the plain language of the statute does not mandate such a result. As in all other retaliatory discharge cases, employees discharged for violating an absence control policy must produce actual or circumstantial evidence that there is a causal connection. This does not place a burden on employees to disprove that the sole cause of their discharge was violation of such a policy; they must merely meet their burden of proving that their instituting a compensation claim was a factor in their termination.[1] Palmer did not meet that burden. For this reason, we overrule points one, two, four and six through ten.

### EVIDENCE

Now we consider Palmer's arguments that the trial court's evidentiary rulings were erroneous. At trial, he objected to exhibits 16 through 48 offered by Miller. These exhibits are multiple records made during his employment which evidence numerous disciplinary actions for his frequent absence. They were offered by Miller to rebut the allegations that it wrongfully discharged Palmer. He objected to these exhibits because they were remote in time

and because the union contract stated that no discipline given more than twelve months prior to the current act would be considered by Miller when it undertook a disciplinary action.

We uphold the trial court's ruling despite these two arguments. First, Palmer cites no case and we find no rule of law stating that parties can contract as to what is admissible evidence in a court of law. The only theory similar to this argument is the contractual parol evidence rule, where a party ordinarily cannot introduce extrinsic evidence which contradicts a written agreement. *Hubacek v. Ennis St. Bank,* 159 Tex. 166, 317 S.W.2d 30, 33 (1958). In this case, the trial court was not construing an ambiguous contract, instead it was determining whether Miller discharged Palmer in violation of article 8307c; thus, his absence record was probative to Miller's determination to place him on the "Final Notice Procedure" and eventually discharge him. *Cf. City of Houston v. Goings,* 795 S.W.2d 829, 833 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (when not introducing evidence in order to interpret an ambiguous contract the evidence is admissible if probative to an issue at trial).

Second, although evidence can be excluded when it is too remote to be material, the question of remoteness is within the trial court's discretion. *Freeman v. Texas Compensation Ins. Co.,* 603 S.W.2d 186, 193 (Tex.1980); *Union Transports Inc. v. Braun,* 318 S.W.2d 927, 941 (Tex.Civ.App.—Eastland 1959, no writ). Where the evidence is directly related to the main subject in controversy, it need not relate to the exact time in question. *Washington Nat'l Ins. Co. v. Curry,* 97 S.W.2d 525, 527 (Tex.Civ.App.—Dallas 1936, no writ). In this case, the evidence directly related to Miller's reason for placing Palmer on the "Final Notice procedure," which eventually led to his discharge. We hold that the trial court did not abuse its discretion by admitting the exhibits. Palmer's third point of error is overruled.

---

1. For a review of what is sufficient or insufficient under this prong see *Ethicon Inc. v. Martinez,* 835 S.W.2d 826, 834 n. 5 (Tex.App.—Austin 1992, writ denied), and *Richards,* 624 S.W.2d at 599.

Palmer's fifth point of error is that the trial court erroneously limited his cross-examination of one of Miller's agents. In support of his argument, he relies on TEX. R.CIV.EVID. 611(b), which provides that a witness may be cross-examined on any matter relevant to any issue in the case. However, the extent of cross-examination is within the trial court's discretion and its ruling will not be disturbed unless an abuse of that discretion is shown. *Harrison v. Texas Employers Ins. Ass'n*, 747 S.W.2d 494, 498 (Tex.App.—Beaumont 1988, writ denied).

The question which the court did not allow Palmer to ask was a hypothetical:

Q. If he [a fictitious employee] wasn't in the cast, but the doctor says he is off because of leg pain after he got out of his cast, would you fire him for those absences?

Palmer argues that this showed discrimination because the absence was counted against him when it would not have been counted against another employee. Whether an employee is discriminated against is circumstantial evidence of a causal link between the termination and the institution of a compensation claim. *Paragon Hotel*, 783 S.W.2d at 658. However, for the exclusion of evidence to constitute error, Palmer must show that the trial court committed error and that error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex.1992). To show error, Palmer must make an informal or formal bill of exception, showing the substance of what was excluded. *Gulf Paving Co. v. Lofstedt*, 144 Tex. 17, 188 S.W.2d 155, 159 (1945); *Greenstein v. Burgess Marketing*, 744 S.W.2d 170, 178 (Tex. App.—Waco 1987, writ denied). Palmer stopped just short of this because he did not get an answer to the excluded question. Without this answer, he cannot show error or that the error was calculated to reasonably cause and probably did cause the rendition of an improper judgment. Thus, we overrule Palmer's fifth point of error.

## CONTRACTUAL OBLIGATION OF GOOD FAITH AND FAIR DEALING

Palmer's eleventh point of error is that the trial court erred in granting a partial summary judgment in Miller's favor on the claim that Miller breached its duty of good faith and fair dealing. His position, as stated to the trial court, is that:

Plaintiff's cause of action lies in tort and in contract. Defendant argues that the Union contract contains no provisions requiring Miller to investigate the reason for Plaintiff's absenteeism prior to termination ... If Defendant is going to terminate an employee for absenteeism, its first duty is to determine if in truth and in fact [the] employee has been absent within the meaning of the contract.

His argument hinges on the fact that Miller did not investigate the reasons for his absences before it determined to discharge him.

We overrule this point for two reasons. First, an employer has no general duty of good faith and fair dealing in an at-will employment relationship. *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 289 n. 1 (Tex.1993) (per curiam); *Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723, 724–25 n. 2 (Tex.1990). Second, there was no contract between Palmer and Miller creating a duty to investigate absences in good faith and with fair dealing.

Palmer argues that there is a written agreement under which Miller and the union should be held to the duty of good faith and fair dealing. As argued by Miller in its motion for summary judgment, a review of this contract shows us that it contains no absence control policy. The "Final Notice Procedure," controlling chronic absence, is separate from the contract, and it states that when an employee is placed on the "Final Notice Procedure," each absence will be calculated to obtain the employee's absentee rate, including absences, "paid sick leave and non-hospitalized A[ccidents] & S[ickness], tardiness, and leave earlies." Simply put, there was never any contractual language obligating Miller to investigate

**64**

the reason for Palmer's absence under either the union contract or Miller's absence control policy. Because there is no such contractual duty, there can be no breach of contract or duty as to this matter and the summary judgment was proper. *See RGS, Cardox Recovery v. Dorchester Enhanced Recovery Co.*, 700 S.W.2d 635, 638 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.); *cf. Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex.1983) (when the contract is ambiguous summary judgment is not proper). Palmer's eleventh point of error is overruled.

Points of error one, two, four and six through ten, are overruled because Miller did not violate article 8307c when it discharged Palmer solely for violating its absence control policy. Point of error three is overruled because the trial court did not abuse its discretion with its evidentiary rulings. Point of error five is overruled because Palmer did not preserve the alleged error. Point of error eleven is overruled because employers do not have an implied duty of good faith and fair dealing in terminating an at-will employment relationship and because Miller has no such contractual duty in this case.

The judgment of the trial court is in all things affirmed. Costs of appeal are assessed against Palmer.