Bettye J. GAUTHREAUX, Plaintiff

v.

BAYLOR UNIVERSITY MEDICAL CENTER, Defendant.

Civ. No. 3:92–CV–2258–H.

United States District Court,
N.D. Texas,
Dallas Division.

April 29, 1994.

Joseph Henry Mitchell, Dallas, TX, for plaintiff.

Stephen N. Wakefield and Buford & Ryburn, Dallas, TX, for defendant.

## ORDER

SANDERS, Chief Judge.

Before the Court are Defendant's Motion for Summary Judgment, with supporting materials, filed February 28, 1994; Plaintiff's Response, with supporting materials, filed March 8, 1994; and Defendant's Reply, with supporting materials, filed March 14, 1994.

## I. BACKGROUND

This is an employment discrimination case, involving alleged violations of the Rehabilitation Act and of the Texas Workers' Compensation Act.

Defendant is a medical center which provides, amongst other things, psychiatric care for geriatric patients. Plaintiff was continuously employed by Defendant as a Clinical Nurse from July, 1989, until February, 1992. At the time of her termination, Plaintiff worked weekends as a psychiatric nurse in Defendant's psychiatric ward.

In 1967, Plaintiff underwent a successful spinal fusion which left moderate restrictions upon her ability to do repeated stooping or heavy lifting. Plaintiff also suffers from myasthenia gravis.[1]

In October, 1991, Plaintiff injured her back while lifting an obese, geriatric psychiatric patient. In late November, 1991, Plaintiff injured her back, shoulders and neck while restraining a combative patient. Plaintiff reported each of these injuries to her supervisor, Neely Lynch. Plaintiff did not miss any time at work because of her injuries.

On November 13, 1991, Plaintiff's doctor, Dr. Steven Herzog, wrote a letter recommending that, due to her myasthenia gravis, Plaintiff not do any heavy lifting. See Defendant's Motion at Exhibit AA. Dr. Herzog's letter states that the restriction on heavy lifting "especially relate[s] to lifting and transferring patients." Id. This letter was delivered to Defendant on December 1, 1991, after the incidents in October and November. See Complaint at ¶ XIV.

After receiving the letter from Dr. Herzog, Defendant directed Plaintiff to see Dr. Wilson Weatherford, a doctor employed by Defendant. On December 20, 1991, Dr. Weatherford consulted with Plaintiff; Plaintiff contends that this consultation did not involve a physical examination. Based on this consultation, Dr. Weatherford gave Plaintiff a "Disposition Slip" suggesting that Plaintiff be transferred to a less physically strenuous position. See Plaintiff's Response at Attachment to Exhibit C7. Dr. Weatherford also sent a letter to Connie Bowling concurring in Dr. Herzog's recommendation against lifting and stooping. See Defendant's Motion at Exhibit AB.

At some point after her injuries in October and November, Plaintiff filed a claim for worker's compensation. See Plaintiff's Response at Exhibit C10; Complaint at ¶ XXIX.

On December 20, 1991, Ms. Bowling removed Plaintiff from patient care and assigned her alternative tasks. Plaintiff alleges that the alternative tasks were merely clerical and were demeaning.

On January 9, 1992, Ms. Bowling informed Plaintiff that because Plaintiff was unable to participate in direct patient care, she would be replaced on February 9, 1992. Ms. Bowling suggested that Plaintiff consider transferring to a position within the Medical Center which did not involve direct patient care.

On January 30, 1992, Plaintiff and Ms. Bowling again met to discuss Plaintiff's position. Ms. Bowling advised Plaintiff that Defendant viewed Plaintiff as unable to perform direct nursing care, and that Plaintiff should consider alternative positions with Defendant. Ms. Bowling extended Plaintiff's termination date to February 28, 1992. On February 6, 1992, Plaintiff was relieved of all of her duties. On February 28, 1992, Plaintiff was terminated by Defendant.

Plaintiff filed her Complaint on October 30, 1992. In her Complaint, Plaintiff alleges that she was terminated because of her age

---

1. The Court understands myasthenia gravis to be a neuromuscular disease which results in sporadic variations in energy level. See Defendant's Brief at p. 13, n. 1.

in violation of ADEA, 29 U.S.C. §§ 621 *et seq.*, and because of her handicap in violation of the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.* Plaintiff also alleges that Defendant violated the Texas Workers' Compensation Act, Tex.Rev.Civ.Stat. 8307c. Finally, Plaintiff alleges that Defendant's actions were willful and malicious and caused Plaintiff severe emotional distress.

## II. SUMMARY JUDGMENT STANDARD

In proper circumstances, awarding summary judgment is not disfavored in the federal courts: "[s]ummary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir.1986).

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. *See* Fed.R.Civ.P. 56. Before a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the non-movant's case. *See Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The threshold inquiry, therefore, is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Of course, "the substantive law will identify which facts are material." *Id.* at 248, 106 S.Ct. at 2510.

The Supreme Court has explained that a movant for summary judgment need not support the motion with evidence negating the opponent's case; rather, once the movant establishes that there is an absence of evidence to support the non-movant's case, the burden is on the non-movant to make a showing sufficient to establish each element as to which that party will have the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

Once the burden shifts, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original) (*quoting* Rule 56(e)); *see also Fontenot*, 780 F.2d at 1195–98. A party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Stated another way, "[i]f the record, taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir.1991) (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356). In determining whether a genuine issue exists for trial, all of the evidence must be viewed in the light most favorable to the motion's opponent. *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir.1990). With these summary judgment standards in mind, the Court turns to an analysis of Defendant's Motion in this case.

## III. ANALYSIS

On February 28, 1994, Defendant filed its Motion for Summary Judgment, requesting dismissal of all of Plaintiff's Causes of Action. On March 3, 1994, Plaintiff filed her Response. In her Response, Plaintiff agrees to drop the charges of age discrimination and severe emotional distress. Based upon the agreement of the parties, Plaintiff's First Cause of Action (age discrimination) and Third Cause of Action (severe emotional distress) are **DISMISSED.** The Court will address each of Plaintiff's remaining two causes of action in turn.

### A. REHABILITATION ACT

The Rehabilitation Act prohibits discrimination against an otherwise qualified individual with a disability in programs and activities that receive Federal assistance. *See* 29

U.S.C. § 794(a).[2] One of the Act's purposes is to "assure that handicapped individuals receive 'evenhanded treatment' in relation to nonhandicapped individuals." *Traynor v. Turnage*, 485 U.S. 535, 548, 108 S.Ct. 1372, 1382, 99 L.Ed.2d 618 (1987) (quoting *Alexander v. Choate*, 469 U.S. 287, 304, 105 S.Ct. 712, 721–22, 83 L.Ed.2d 661 (1985)).

■ To qualify for relief under the Rehabilitation Act, Plaintiff must prove that: (1) she was disabled; (2) she was otherwise qualified to perform the essential duties of the job; (3) she worked for a program which received Federal financial assistance; and (4) she was terminated because of her handicap. *Chiari v. City of League City*, 920 F.2d 311, 315 (5th Cir.1991). In order to succeed on summary judgment, Defendant must show that Plaintiff cannot prove all four required elements. For purposes of this Motion, Defendant only challenges Plaintiff's ability to prove elements (2) that she is qualified to perform essential duties and (4) that she was terminated because of her handicap.[3]

### 1. OTHERWISE QUALIFIED

■ In order to determine whether Plaintiff was "otherwise qualified" to be a nurse in the psychiatric unit, the Court must first determine whether Plaintiff could perform the essential functions of the job.[4] *Chiari*, 920 F.2d at 315; *School Board of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1130–31 n. 17, 94 L.Ed.2d 307 (1987).

Defendant argues that Plaintiff cannot perform the essential functions of the job because she cannot engage in heavy lifting. In support of this argument, Defendant has submitted sworn statements that "assisting pa-

tients, lifting them, moving them, transferring them to different locations, restraining patients and other physical patient care functions, or floating to other departments where these functions would be required" are essential functions of a psychiatric nurse. *See* Defendant's Motion, Exhibit A, Affidavit of Connie Bowling at pp. 3–4. *See also* Defendant's Motion, Exhibit B, Affidavit of Neely Lynch at p. 3.

Plaintiff does not contend that she is able to perform these functions. Rather, Plaintiff contends that transferring patients, restraining patients and other duties involving heavy lifting are not essential functions of the job. In support of her position, Plaintiff has submitted sworn testimony from expert witnesses that the functions described by Defendant as essential are not, in fact, essential. *See* Plaintiff's Response, Exhibit B, Affidavit of Donna Stevens at p. 2; and Exhibit C6, Deposition of Johanna Clevenger at pp. 45–47. Plaintiff argues that it is a disputed issue of material fact whether heavy lifting is an essential function of the job.

The Court agrees with Plaintiff that the issue of whether heavy lifting is an essential function of the position of psychiatric nurse is a disputed factual issue. Thus, Defendant has failed to show that Plaintiff cannot prove that she was otherwise qualified for the job of psychiatric nurse.

### 2. REASON FOR TERMINATION

Having decided that an issue of fact remains as to the second factor in the *Chiari* test, the Court now turns to the fourth factor, namely, whether Plaintiff was terminated because of her disability. Defendant states that the reason for Plaintiff's termination

---

2. Section 794(a) provides in relevant part:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

3. Defendant does not concede that Plaintiff can prove elements (1) and (3). The burden of proving all four elements will be on Plaintiff at trial.

4. Both parties devoted substantial energy to briefing the question of whether Defendant made reasonable accommodations for Plaintiff's handicap. Under current law, the Court only reaches the issue of reasonable accommodation if it determines that Plaintiff could not perform the essential functions of the job. *Chiari*, 920 F.2d at 315; *School Board of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1130–31 n. 17, 94 L.Ed.2d 307 (1987). Because the Court finds that there is a disputed issue of material fact as to whether Plaintiff could perform the essential functions of the job, the Court does not reach the issue of reasonable accommodation.

was that "[s]he was unable to perform the essential functions of her job and could not be reasonably accommodated to do so." *See* Defendant's Brief at p. 22. As noted above, whether the functions that Plaintiff could not perform were essential to the job of psychiatric nurse is a question of fact to be resolved at trial. The Court concludes that Defendant has failed to show that Plaintiff cannot prove that Plaintiff's disability was the reason for her termination.

As it is possible that Plaintiff will be able to prove all four elements necessary to succeed on her Rehabilitation Act claim, Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's Second Cause of Action.

### B. WORKER'S COMPENSATION

■ Plaintiff alleges that she was terminated in retaliation for filing a Worker's Compensation claim in violation of Texas Workers' Compensation Act, Tex.Rev.Civ. Stat. Art. 8307c[5]. Defendant denies that Ms. Bowling, the person who decided to terminate Plaintiff, had any knowledge that Plaintiff had filed a Worker Compensation claim, and, hence, could not have based the decision to terminate Plaintiff upon Plaintiff's filing of a Worker Compensation claim.

■ Texas courts have "liberally construed" article 8307c in order " 'to protect persons who are entitled to benefits under the Worker's Compensation Law and to prevent them from being discharged by reason of taking steps to collect such benefits.' " *Palmer v. Miller Brewing Co.,* 852 S.W.2d 57, 60 (Tex.App.—Fort Worth 1993, writ denied) (quoting *Carnation Co. v. Borner,* 610 S.W.2d 450, 453 (Tex.1980)). Thus, an employee does not need to have actually filed a Workers' Compensation claim in order to invoke the protection of the article. Rather, the employee need only takes steps towards instituting a compensation proceeding in order to be protected. *Palmer,* 852 S.W.2d at 61 (citing *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 84 (Tex.App.—El Paso 1992, no writ) and *Mid–South Bottling Co v. Cigainero,* 799 S.W.2d 385, 389 (Tex.App.—Texarkana 1990, writ denied)). "The act of informing the employer of the injury sufficiently institutes a compensation proceeding" to invoke the protection of article 8307c. *Palmer,* 852 S.W.2d at 61.

■ The employee has the burden of establishing a causal link between the employee's potential workers' compensation claim and the employee's termination. *Palmer,* 852 S.W.2d at 61; *Trevino v. Correction Corp. of America,* 850 S.W.2d 806, 808 (Tex.App.—El Paso 1993, writ denied). The employee need not prove that the Workers' Compensation claim was the sole cause of his or her termination. *Palmer,* 852 S.W.2d at 61; *Trevino,* 850 S.W.2d at 808. When it is shown that the employee told his or her employer about the injury upon which the workers' compensation claim is based, "there is a fact question as to whether there is a causal connection between the compensation proceeding and termination." *Palmer,* 852 S.W.2d at 61. Corroborating or supporting evidence can be either direct or circumstantial. *Palmer,* 852 S.W.2d at 61.

■ The burden then shifts to the employer to show a legitimate reason for the discharge. *Trevino,* 850 S.W.2d at 808 (citing *Hughes Tool Co. v. Richards,* 624 S.W.2d 598, 599 (Tex.Civ.App.—Houston 1981, writ ref'd n.r.e.), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982)); *Palmer,* 852 S.W.2d at 61.

In this case, Plaintiff suffered two different work related injuries, one in October, 1991, and one in November, 1991. It is undisputed that Plaintiff informed her supervisor, Neely Lynch, about each of these injuries. Thus, the Court concludes that Plaintiff may have

---

**5.** Article 8307c provides:

No person may discharge or in any other manner discriminate against an employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted in good faith, any proceeding under the Texas Workers' Compensation Act, or has testified or is about to testify in any such proceeding.

Article 8307c was repealed and recodified in the Texas Labor Code, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Sess.Law Serv. 7, effective September 1, 1993. Sections 451.001–.003 of the Texas Labor Code contain the provisions of article 8307c. The recodification did not change the substantive law.

"sufficiently instituted a compensation proceeding" so as to invoke the protection of article 8307c, and to shift the burden to Defendant. *Palmer*, 852 S.W.2d at 61.

Defendant has stated that it discharged Plaintiff because she was unable to do the essential functions of the job. As noted *supra* § III(A)(1)(a), there is a disputed issue of material fact as to whether the functions which Plaintiff cannot perform are essential. Thus, Defendant has failed to prove that it had a legitimate reason for discharging Plaintiff.

Moreover, assuming *arguendo* that Defendant's has shown a legitimate reason for discharging Plaintiff, Plaintiff has submitted corroborating circumstantial evidence to raise an issue of fact for trial. For instance, Defendant argues that the decision-maker in this case, Connie Bowling, had no knowledge of Plaintiff's injury. However, Plaintiff has submitted deposition testimony from Ms. Bowling that under Defendant's "normal procedures," Ms. Bowling should have received an Employee Accident On Duty Form within a day or two after each of Plaintiff's injuries. *See* Plaintiff's Response at Exhibit C8, Affidavit of Connie Bowling at p. 133–34. Plaintiff is entitled to have a finder of fact determine whether Ms. Bowling knew about Plaintiff's on-the-job injuries at the time she made the decision to terminate Plaintiff.

The Court concludes that there are disputed issues of material fact as to Plaintiff's Workers' Compensation claim. Thus, Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's Fourth Cause of Action.

## IV. CONCLUSION

Plaintiff's First and Third Causes of Action are **DISMISSED**.

Defendant's Motion for Summary Judgment is **DENIED**.

Jury trial in this case is set for the weeks of June 6 and 13, 1994. *See* Scheduling Order of October 22, 1993.

SO ORDERED.