Opinion issued March 27, 2003



     






In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00024-CV




BRENT M. MILLER, Appellant

V.

STOLTHAVEN HOUSTON, INC., Appellee




On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2000-28766




MEMORANDUM OPINION

          Brent M. Miller, appellant, sued appellee, Stolthaven Houston, Inc., claiming
(1) age discrimination under Title VII of the Civil Rights Act; (2) unlawful retaliation
under 42 U.S.C. § 2000e-3, and section 21.055 of the Texas Labor Code; (3)
intentional infliction of emotional distress; and (4) unlawful retaliation under section
451.001 of the Texas Labor Code. Appellee removed the case to the United States
District Court for the Southern District of Texas. The federal district court granted
summary judgment for appellee on appellant’s claims and remanded appellant’s
“claim for retaliatory termination of employment” under section 451.001 of the Texas
Labor Code. Tex. Lab. Code Ann. § 451.001 (Vernon 1996). On October 9, 2001,
the trial court granted summary judgment for appellee on appellant’s remaining claim
of unlawful retaliation.
          Appellant appeals from the grant of summary judgment against him, and, in a
single point of error, argues that the trial court erred in granting summary judgment
because there still existed genuine issues of material fact as to whether appellant was
terminated for unlawful retaliation. 
          We affirm.
Facts
          Appellant began his employment with appellee in 1995. In 1998, appellant was
promoted to the position of day gauger and was supervised by Thomas Paul. David
Coiley, the terminal manager, supervised Paul. On June 15, 1998, appellant received
his first written disciplinary report regarding his use of the time clock. The
disciplinary report stated the following:
On several occasions [appellant] has written in start times on his time
card that did not reflect actual times of beginning his shift and did not
have his time card initialed by a supervisor. His later arrival times into
the facility which have been verified by the security computer to the
times he has written in vary significantly.

Appellant signed the report and wrote on it that, “this will never happen again . . . I
am sorry for being a problem!”
          On March 16, 1999, appellant was injured while working and was diagnosed
as having a hernia. Appellant reported his injuries to appellee the same day that they
occurred. The following day, appellant received his second written disciplinary
report. The report stated that appellant had failed to report a broken “Chevron O2
Meter.” Appellant did not sign this second report and checked the box on the report
that indicated he disagreed with the report. Appellant wrote a handwritten statement,
in which he claimed that he was not at fault for failing to report the broken meter and
that the terminal manager, Coiley, was discriminating against him. Appellant did not
state why he believed Coiley was discriminating against him.
          Following appellant’s injury, he took a leave of absence for approximately six
to eight weeks. Thereafter, appellant returned to work and performed light duty
assignments for a few weeks before returning to full duty. Appellant stated in his
deposition that, after returning to work, he was subjected to derogatory and
intimidating remarks by Coiley. Appellant testified that Coiley, in mentioning his
previous experience as a captain of a ship, stated that Filipinos who developed
hernias were thrown over the side of the ship. Appellant also claimed that, while on
light duty, Coiley told him that he was going to become a “lazy bastard.” Appellant
further testified that Coiley directed profanity at him on other occasions. Coiley
testified in his own deposition that he was previously the captain of a ship that had
Filipinos on it, but that he could not recall telling appellant that Filipinos with hernias
were thrown over the side. Coiley also testified that he did use profanity at work, but
that he could not remember ever directing profanity at appellant. 
          On September 21, 1999, Appellant received his third written disciplinary
report. The report was prepared and signed by Paul and stated that appellant had
failed to report a steam leak on a utility line located in his work area. Appellant
signed the report, but checked the box to indicate that he disagreed with his
supervisor’s assessment. In a follow-up statement, appellant claimed that the leak
was in an area where he never had reason to go, and that Coiley had falsely accused
him of failing to report it. Appellant did not discuss his injury or his worker’s
compensation claim in the follow-up report. In a letter discussing the incident,
written by Paul to the EEOC division of the Texas Workforce Commission, Paul
stated that, “like [appellant] I feel David Corley [sic] was looking for a reason to get
rid of [appellant] because [appellant] had caught [Coiley] in some lies (steam leak and
Chevron meter).” Appellant testified in his deposition that he agreed with the letter
written by Paul and that he had in fact told Paul he thought Coiley wanted to get rid
of him because he had caught Coiley in some lies.
           On December 29, 1999, appellant received his fourth written disciplinary
report. The report stated the following:
[Appellant] you have been observed over a period of time consistently
clocking in and out while dressed in your street clothes. It clearly states
in the Non-Union Hourly Employee Manual Section 3-2, Paragraph 1(c)
that this is not the correct procedure.

The report went on to inform appellant that because he had been caught “milking” the
clock for the second time, he would be terminated. Appellant then filed suit.
Standard of Review 
          The standards for reviewing a motion for summary judgment are as follows:
(1) the movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that the movant is entitled to judgment as a matter
of law; (2) in deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the nonmovant will be taken as true; and
(3) every reasonable inference must be indulged in favor of the nonmovant and any
doubts resolved in the nonmovant’s favor. Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex. 1985). A defendant is entitled to summary judgment if at
least one element of each of the plaintiff’s causes of action is negated as a matter of
law. Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 476-77 (Tex. 1995). 
A defendant may also prevail on a motion for summary judgment by conclusively
proving all elements of an affirmative defense as a matter of law, such that there is
no genuine issue of material fact. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995)
(per curiam). 
          A no-evidence motion for summary judgment is proper when there is complete
absence of evidence of a vital fact, or the evidence offered to prove a vital fact is no
more than a scintilla, or the evidence conclusively establishes the opposite of the vital
fact. Merrell Dow Pharmacy, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).
Discussion
          In his sole point of error, appellant argues that the trial court erred in granting
summary judgment for appellee because there still existed genuine issues of material
fact as to whether appellant was terminated for filing a worker’s compensation claim.
Appellant also contends that summary judgment was granted in error because
appellee’s motion for summary judgment only addressed appellant’s termination
claim, and not appellant’s separate claim of discrimination.
Claims under Section 451.001
          As an initial matter, we will discuss appellant’s contention that appellee only
addressed appellant’s claim for retaliatory termination, and did not address
appellant’s separate claim of discrimination. Appellee argues that appellant pled a
single claim under section 451.001, and that claim was for retaliatory termination. 
Appellee also contends that, even if more than one claim was pled, the federal district
court remanded only the claim of retaliatory termination to the trial court. We agree
with appellee. Our review of the record indicates that the parties and courts treated
appellant’s entire action under section 451.001 as a single claim. The federal district
court’s order stated that, “this Court SEVERS the claim for retaliatory termination .
. . and REMANDS that claim to the 113th District Court . . . .” (emphasis added). 
Further, appellant’s own pleadings treat his action under 451.001 as a single claim. 
Appellant’s pleadings state that, “Plaintiff accordingly asserts a claim against
defendant pursuant to the provisions of Tex. Labor Code § 451.001 . . . .” (emphasis
added). Accordingly, in holding that appellee’s motion for summary judgment was
sufficient in treating appellant’s action under section 451.001 as a single claim, we
next determine if there was a genuine issue of material fact as to whether appellee
discriminated against appellant because he filed a worker’s compensation claim.
Overview of Section 451.001 Burden-Shifting 
          Section 451.001 of the Texas Labor Code is a statutory exception to the Texas
common law doctrine of employment-at-will. Terry v. S. Floral Co., 927 S.W.2d
254, 256 (Tex. App.—Houston [1st Dist.] 1996, no writ). The statute provides:
A person may not discharge or in any other manner discriminate against
an employee because the employee has: (1) filed a worker’s
compensation claim in good faith; (2) hired a lawyer to represent the
employee in the claim; (3) instituted or caused to be instituted in a good
faith proceeding under Subtitle A; or (4) testified or is about to testify
in a proceeding under Subtitle A.

Tex. Lab. Code Ann. § 451.001. 

          An employee asserting a violation of section 451.001 has the initial burden of
demonstrating a causal link between the discharge and the filing of the claim for
worker’s compensation benefits. Terry, 927 S.W.2d at 257. The causal link must
establish only that the termination would not have occurred when it did if the
employee had not filed the worker’s compensation claim. Continental Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). 
          To prove the causal connection, direct or circumstantial evidence may be used. 
Jenkins v. Guardian Indus. Corp., 16 S.W.3d 431, 441 (Tex. App.—Waco 2000, pet.
denied). Circumstantial evidence can include: (1) knowledge of the compensation
claim by those making the decision on termination; (2) expression of a negative
attitude towards the employee’s injured condition; (3) failure to adhere to established
company policies; (4) discriminatory treatment in comparison to similarly situated
employees; and (5) evidence that the stated reason for the discharge was false. Id. at
435; Palmer v. Miller Brewing Co., 852 S.W.2d 57, 61 (Tex. App.—Fort Worth 1993,
writ denied); Paragon Hotel Corp. v. Ramirez, 783 S.W.2d 654, 658 (Tex. App.—El
Paso 1989, writ denied). 
          Once the link is established, it is the employer’s burden to rebut the alleged
discrimination by showing there was a legitimate reason behind the discharge. Terry,
927 S.W.2d at 257. If the employer shows a legitimate, non-discriminatory reason
for the termination, the burden shifts back to the employee to produce controverting
evidence of a retaliatory motive. See Texas Division-Tranter, Inc. v. Carrozza, 876
S.W.2d 312, 314 (Tex. 1994). If the employee cannot produce controverting
evidence of a retaliatory motive, summary judgment against the employee is proper. 
Id. 
Evidence of a Causal Link
          In determining if there was evidence of a causal link between appellant’s
termination and his filing of a worker’s compensation claim, we will review the
circumstances outlined in Jenkins to aid in our analysis of whether appellant showed
a causal link between the filing of his worker’s compensation claim and his
termination. See 16 S.W.3d at 441. 
          One indicator of a causal link is whether there was knowledge of the
compensation claim by those making the decision on termination. It was Coiley who
made the decision to terminate appellant. Coiley is deemed to have been aware of
appellant’s worker’s compensation claim if he knew of appellant’s on-the-job injury. 
Housing Auth v. Guerra, 963, S.W.2d 946, 950 (Tex. App.—El Paso 1998, pet.
denied). It is undisputed that Coiley knew of appellant’s occupational injury and that
appellant was absent from work because of the injury. Accordingly, Coiley’s
knowledge of appellant’s injury and accident is an indicator of a causal link between
appellant’s termination and his filing of a worker’s compensation claim.
          Another circumstance is whether there was an expression of a negative attitude
towards the employee’s injured condition. Appellant testified that, after returning to
work, Coiley had told him that Filipinos who developed hernias were thrown over the
side of the ship. Appellant’s supervisor, Paul, testified in his deposition that
derogatory comments were also made by Coiley towards other workers who had been
injured. Because appellant and Paul have testified as to statements by Coiley that
indicate a negative attitude towards appellant’s injured condition, we hold that this
is also an indicator of a causal link between appellant’s worker’s compensation claim
and his termination.
          The fourth and fifth circumstances outlined in Jenkins, whether the reason
given for termination was false, and whether other similarly situated employees were
treated differently, were also used by appellant to show that he was terminated for
filing a worker’s compensation claim. Appellant contends that he did not violate
company policy by clocking in and out of work in his street clothes, and that other
workers who also clocked in and out in their street clothes were not punished for their
actions. The employee manual states that, “The employee shall not clock in until they
are dressed and ready to begin work and shall clock out at the end of their work day
prior to showering and/or changing.” Appellant testified in his deposition that,
because his job duties at the beginning and end of the day involve work at his
computer, he was not required to wear his fire-retardant uniform, and was, therefore,
not in violation of the company policy. Appellant also testified that he had seen other
employees clocking in and out dressed their street clothes. In Paul’s deposition, Paul
testified that he also witnessed employees clocking in and out while dressed in their
street clothes, and that managers had seen them do it. We hold that this is also
evidence indicating a causal link between appellant’s termination and his filing of a
worker’s compensation claim.
          Appellant also presented evidence that two-thirds of employees who initiated
worker’s compensation claims seeking indemnity benefits between 1997 and 2001
were also terminated within that same time frame. Our review of the record indicates
that six employees sought indemnity benefits and four of those were terminated, but
overall, 44 employees filed worker’s compensation claims, and only four of those
were later terminated. Appellant has not explained why we should look only at
employees who sought indemnity benefits, and appellant has also failed to show what
the termination rate is for employees who did not file worker’s compensation claims. 
Without that information, we cannot determine that appellant’s statistical data
indicates a causal link between appellant’s termination and his filing of a worker’s
compensation claim.
          After reviewing appellant’s summary judgment evidence, we conclude that,
even without consideration of appellant’s statistical data, appellant has presented
some circumstantial evidence establishing a prima facie case of retaliatory
termination. Coiley’s knowledge of appellant’s injury, testimony of Coiley’s negative
attitude towards appellant’s injured condition, and some evidence of disparate
treatment and of potential fabrication of the reason for appellant’s termination,
establish a causal link between appellant’s termination and the appellant’s filing of
a worker’s compensation claim. Accordingly, we will now determine if appellee
provided a legitimate reason for appellant’s termination that is unrelated to
appellant’s filing of a worker’s compensation claim. See Terry, 927 S.W.2d at 257. 
Legitimate Reason for Termination
          Appellee argues that the evidence shows that appellant was fired for reasons
other than appellant’s filing of a worker’s compensation claim. Appellee contends
that appellant was terminated for violating company policy, and, if there was any
discrimination that appellant suffered from Coiley, it stemmed from a personal
dispute between the two of them, and was not related to appellant’s filing of a
worker’s compensation claim.
           At Coiley’s deposition, he testified that appellant was terminated for “milking”
the clock, and that appellant was the only employee that he had seen violating the
clock policy. Further, at appellant’s deposition, appellant answered “yes” to the
appellee’s question of if, “after having read [the company policy], would you
conclude that clocking-in in your street clothes was against company policy?” 
          In support of appellee’s claim that appellant and Coiley had a personal dispute,
appellee produced a letter written by Paul to the Texas Workforce Commission that
stated that, “like [appellant] I feel David Corley [sic] was looking for a reason to get
rid of [appellant] because [appellant] had caught [Coiley] in some lies (steam leak and
Chevron meter).” At appellant’s deposition, appellant agreed with the substance of
the letter. The dialogue was as follows:
Q:You agree with what was stated in the letter?
 
A:Yes.

. . . .
 
Q:Did you indicate to [Paul] that you had thought that
[Coiley] wanted to get rid of you because he was
trying to cover up these two incidents?
 
A:Yes.

. . . .
 
Q:We have the letter here. It says “Like [appellant] I
feel,” and it states this reason. In your opinion does
that capture your feeling of the matter?
 
Attorney:Objection. Vague and ambiguous.
 
A:Yeah. I think it’s clear.

          After reviewing the summary judgment evidence, we hold that appellee
provided evidence that appellant’s termination was not related to appellant’s filing
of a worker’s compensation claim. Appellant had already received a disciplinary
report for “milking” the clock before he was injured, and Coiley provided testimony
that appellant was terminated because he had “milked” the clock for the second time,
and that he had not disciplined others for violating the clock policy because he was
not aware of any other violations. Appellee’s evidence of appellant’s testimony that
Coiley “got rid of him” because he had caught Coiley in some lies is also evidence
that appellant was fired for reasons other than his filing of a worker’s compensation
claim. Having determined that appellee provided evidence that appellant was
terminated for reasons other than his filing of a worker’s compensation claim, we now
determine whether summary judgment was properly granted.
Propriety of Summary Judgment
          When the employer provides evidence of a legitimate reason for the employee’s
termination, summary judgment is appropriate for the employer unless the employee
produces evidence of a retaliatory motive. Terry, 927 S.W.2d at 257. In this case,
while appellant testified that Coiley had told him that Filipinos with hernias were
thrown off of his ship, appellant has established, through his own testimony at his
deposition, that the “discrimination,” suffered by appellant at the hands of Coiley
resulted from a dispute not related to appellant’s filing of a worker’s compensation
claim. Appellee asked appellant in appellant’s deposition if Paul’s letter captured
appellant’s “feeling of the matter.” Paul’s letter had stated that he thought Coiley was
looking for a reason to fire appellant because appellant had caught him in some lies. 
Appellant responded to the question by saying, “Yeah. I think it’s clear.” We do not
pass judgment on whether Coiley’s conduct was immoral or otherwise unlawful, but
we hold that, because appellant unambiguously testified that Coiley’s discrimination
against him resulted from a dispute between the two of them not related to appellant’s
filing of worker’s compensation claim, Coiley’s conduct did not constitute unlawful
retaliation under section 451.001. Accordingly, we hold that the trial court did not
err in granting summary judgment for appellee.
          We overrule appellant’s sole point of error.
Conclusion
We affirm the trial court’s judgment. 
 
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.