## ROGERS v. INDUSTRIAL RICE MILLS et al. (No. 8889.)

Court of Civil Appeals of Texas. Galveston. Feb. 24, 1927.

1. **Libel and slander** ⊜⟶123(8)—Directed verdict for defendant, in slander suit, held proper, where defendant pleaded privilege, and evidence failed to raise issue of bad faith.

In action for slander, verdict was properly directed for defendant, where evidence failed to show bad faith of president of rice company in stating sacks found by police in plaintiff's possession belonged to company, and defendant pleaded statement was privileged.

2. **Libel and slander** ⊜⟶43—Communication in good faith to protect interest of person or public is "privileged," whether true or false.

A communication in good faith in discharge of duty or in protecting interest of person communicating or of the public is "privileged," regardless of its truth or falsity.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Privilege.]

3. **Malicious prosecution** ⊜⟶71(1)—Evidence that president of company claiming property testified in prosecution instigated by police held not to raise issue of malicious prosecution.

Evidence that president of company claiming to own goods was summoned and testified as witness in unsuccessful prosecution of plaintiff for receiving and concealing stolen property instigated by police was insufficient to warrant submission to jury on issue of malicious prosecution, and court properly directed verdict for defendant company and president.

---

⊜⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Error from Disrict Court, Harris County; W. E. Monteith, Judge.

Action by W. H. Rogers against the Industrial Rice Mills and another. Judgment for defendants, and plaintiff brings error. Affirmed.

J. R. Hill and P. Harvey, both of Houston, for plaintiff in error.

Vinson, Elkins, Sweeton & Weems, of Houston, for defendants in error.

PLEASANTS, C. J. This is a suit by W. H. Rogers, hereinafter styled appellant, against the Industrial Rice Mills and J. J. Whatley, hereinafter styled appellees, to recover damages for slander, false imprisonment, and malicious prosecution. The following statement of the substance of plaintiff's petition is copied from his brief:

"He alleged, in substance, that he was a good, true, and honest citizen, and always had been; that he maintained himself by honest employment and attention to business, and had the respect and esteem of his business associates and other good citizens, and that he had never been guilty of the atrocious crime of theft, nor of receiving and concealing stolen property, all of which was well known to the defendants in error; that the defendants, maliciously and willfully contriving to injure the plaintiff, in the city of Houston, and in the presence of a large number of people, the said J. J. Whatley acting for himself and as the agent of the Industrial Rice Mills, and in plaintiff's place of business, declaring of and concerning certain flour sacks which had been unlawfully removed from the premises of plaintiff, that 'they are the property of the Industrial Rice Mills and we want them' (meaning thereby that plaintiff had unlawfully obtained possession of said property and was unlawfully concealing the same), thereby caused the arrest of the plaintiff and his subsequent confinement in jail; that, after plaintiff was placed under arrest, he was marched through the streets of Houston, in charge of the officers, in view of a great number of people, during all of which time the defendants were present and acquiesced in what said officers did and were doing to plaintiff, well knowing plaintiff's innocence; that, notwithstanding plaintiff's innocence, defendants caused and permitted the officers to put plaintiff in jail for a long time, and thereafter had him brought before the courts to answer the charge of receiving and concealing stolen property, at which trial the defendant J. J. Whatley appeared and prosecuted the plaintiff on said charge, the defendant (plaintiff in error) being acquitted. He alleged that he did not receive and conceal said flour sacks; that they were given him by one of the agents of the defendants, all of which was known to the defendants, and that they did not have lawful or probable cause to make said slanderous statements charging plaintiff with said crime, and maliciously depriving him of his liberty and maliciously prosecuting him; that, by reason of said wrongful, malicious, and willful acts of the defendants, plaintiff has been, by a large number of his neighbors and friends, suspected of being guilty of said wrongdoing, and has

292 S.W.—60

lost their good will, esteem, etc., and has been forced to spend time and money in vindicating himself, etc., and that he was greatly humiliated and suffered great mental pain and disquietude, to his damage in the sum of $30,000; that, by reason of said matters and things, a great number of his customers and business associates had withdrawn their trade, etc., to his damage in the sum of $20,000."

The defendants answered by general demurrer, special exceptions, and general denial, and, further, specially pleaded the facts as subsequently shown on the trial by the uncontradicted testimony and hereinafter set out; and averred that, if defendant Whatley, individually or as president of the defendant corporation, used the slanderous words concerning plaintiff alleged in the petition, or caused the arrest and prosecution of plaintiff as alleged, such utterances and acts and conduct of defendants were made and done in good faith; "that the defendant J. J. Whatley saw such sacks of the Industrial Rice Mills in plaintiff's premises and possession; that at the time he was and is now the president of the Industrial Rice Mills, and, as such, had a personal interest in said sacks and in making said utterances and his conduct in causing the arrest and restraint of plaintiff in his liberty was in the discharge of a legal, moral, and social obligation to the public, and in the conduct of his own affairs, or in one or more, or all, of said matters, and that the said utterances and conduct in causing the arrest and restraining of plaintiff in his liberty were made to officers of Harris county, Tex., duly commissioned and acting as such and who had a corresponding interest or duty to receive said utterances and to arrest and restrain the said plaintiff in his liberty, and therefore the said utterances or conduct of defendants in causing the arrest and restraining of plaintiff in his liberty were a privileged communication."

After hearing the evidence, the trial court instructed the jury to return a verdict in favor of defendants, and upon return of such verdict rendered judgment in accordance therewith. Appellant assails this judgment upon the ground that the evidence raised the issues of slander and malicious prosecution as charged in the petition, and therefore the trial court erred in not submitting each of these issues to the jury.

The evidence shows that on March 16th several police officers of the city of Houston, with two boys accompanying them, went to plaintiff's place of business, searching for a stolen bicycle. In making this search one of the officers, Mr. Bryson, observed a flour sack, with the name "Industrial Rice Mills" printed thereon, protruding from a partly open trunk in which there were a number of other sacks. What followed this discovery, and the circumstances under which the alleged slanderous statement was made, is thus detailed by the plaintiff:

"When they found the sacks Mr. Bryson took one of them and went out of the door, presumably to the rice mill, at least that is what he said. When he came back he said Mr. Whatley claimed those sacks belonged to him, and I told him that the sacks belonged to me; that the miller had given them to me. I made that statement to Mr. Bryson. Bryson asked me if I would go and tell Mr. Whatley that, and I told him I would, and I went over there with Bryson and told Mr. Whatley. There was not any other officer present at that time. Anderson and Gresham were over there at the rice mill when we got over there. I went over there with Officer Bryson. That was after they had found the sacks. We didn't take but one sack over there to the rice mill. When we got over there at the rice mill I told Mr. Whatley in the presence of Mr. Bryson where I had gotten the sacks; that I had gotten them from Mr. Curtis. * * * At that time Mr. Bryson asked me where I got the sacks, and I told him I got them from Mr. Curtis, and Mr. Whatley turned to Curtis and asked him if he had given me the sacks, and Curtis denied giving them to me, and I told him we wouldn't argue about it. At that time Mr. Whatley said the sacks belonged to him and he wanted them, and Anderson, Bryson, Whatley, and I went back to the shop, and Mr. Whatley got the sacks and took them over to the rice mill. Mr. Whatley took the sacks out of the trunk, I am sure of that. After that Bryson, Anderson, and I sat in the office, and they called up over the telephone, and we sat there and talked for awhile, and then we went back to the rice mill, and by the time we got there the sacks had been counted, and Mr. Whatley told them how many sacks there were, and Bryson said: 'As long as you claim these sacks are yours I am going to file a complaint against Rogers for receiving and concealing stolen property.' Bryson then took me on to town, and Mr. Whatley was not with us thereafter. He was not there any more until the trial came up in court."

Upon the affidavit of Bryson, an assistant district attorney for Harris county filed a complaint against plaintiff, charging him with fraudulently receiving and concealing stolen property. The name of appellee Whatley was indorsed on the complaint as a witness. Plaintiff was tried and acquitted of the charge preferred by this complaint on March 30, 1923. Appellee Whatley was a witness on this trial. There is no evidence as to what he testified on the trial. In the meantime plaintiff had brought suit against the defendant corporation to recover possession of the sacks. The justice court docket in which the suit was filed contains no entry other than that of the filing of the suit. There are no papers in the case on file in the court, and nothing to show the issuance of citation to the defendant. The attorney who represented the plaintiff in the suit testified that he tried the case and obtained a judgment in favor of plaintiff for the title and possession of the sacks. He testified:

"I represented Mr. Rogers in that suit, which was a suit for the possession of some sacks. There were two counts in that suit. I sued for possession of the sacks, and for damages if we couldn't get them. Those were rice flour sacks. I sued for 85 sacks. I had a citation issued in that suit, and the return on that citation showed that it had been served. I prosecuted that suit to judgment before Judge Williams, and I recovered the title and possession of those sacks, and we got possession of the sacks. I went and talked to Mr. Whatley, and asked him if they would turn the sacks over to us after the judgment was rendered. The gentleman I talked to was Mr. Whatley who is here in the courtroom. I was at his mill in his office, and he told me that he had nothing to do with it; that the police had the sacks; that I could go there and get them; and I then went and got the sacks from the police department. They gave them to me down at the police headquarters, and I turned them over to Mr. Rogers. They gave the sacks to me voluntarily."

[1] The foregoing statement contains all of the facts and material testimony adduced by plaintiff. The defendants offered no evidence. We agree with the trial court that the evidence does not raise any issue of liability of defendants for the injury and damages claimed in plaintiff's petition, and therefore there was no error in instructing the jury to return a verdict for the defendants. The statement of defendant Whatley upon which the charge of slander was predicated was clearly privileged to the extent that, if made in good faith and without malice, the defendants are not liable for any injury thereby caused the plaintiff, regardless of the truth or falsity of the statement. The evidence before set out fails to raise the issue of bad faith or malice on the part of Whatley in claiming the sacks as the property of the defendant corporation.

The undisputed evidence shows that the sacks were originally the property of the rice mill. The only claim to their ownership asserted by plaintiff was through a gift from the miller of the rice company. When asked as to the truth of this claim, the miller, in the presence of plaintiff, denied that he had made such gift, and in response to this denial the plaintiff stated that he "would not argue about it."

[2] In these circumstances it was not only the right, but the duty, of the defendant Whatley to claim the sacks as the property of his company, and reasonable minds cannot differ in the conclusion that in making the claim he was acting in good faith and in the honest reasonable belief of its truth; there being no evidence of any ill will or malice on his part towards plaintiff. This rule of law is thus clearly stated by our Supreme Court in the case of Railway Co. v. Richmond, 73 Tex. 568, 11 S. W. 555, 4 L. R. A. 280, 15 Am. St. Rep. 794:

"We understand the law to be that a communication made in good faith, in reference to the matter in which the person communicating has an interest or in which the public has an interest is privileged if made to another for

the purposes of protecting that interest, and that a communication made in the discharge of a duty and looking to the prevention of wrong towards another or the public is so privileged when made in good faith. In such cases, although the statements made may have been untrue, malice cannot be implied from the fact of publication, and to sustain an action in which the existence of evil motive must be proved."

Counsel for appellees, in an able and exhaustive brief, cite a number of decisions by the Supreme Court and appellate courts of this state following and approving this rule of decision, and we are not aware of any decision to the contrary. We cite a few of the many cases cited in appellees' brief: Cranfill v. Hayden, 97 Tex. 544, 80 S. W. 609; Railway Co. v. Edmundson (Tex. Com. App.) 222 S. W. 181; Vacicek v. Trojack (Tex. Civ. App.) 226 S. W. 505; Meyer v. Viereck (Tex. Civ. App.) 286 S. W. 894; Garn v. Lockard, 108 Mich. 196, 65 N. W. 764.

[3] Appellant makes no contention in his brief that his arrest was unlawful, and that question need not be discussed. We think it equally clear that the issue of malicious prosecution is not raised by the evidence. Appellees did not request or instigate the prosecution of plaintiff. After the complaint was filed, appellee Whatley, whose name was on the complaint as a witness, was compelled to appear and testify on the trial when summoned as a witness by the prosecuting officer, and this was the extent of his participation in the prosecution of the plaintiff. If appellees could be held under the facts of this case to have instigated the prosecution, still no liability is shown, because there was not a want of probable cause for the prosecution and no malice is shown. McManus v. Wallis, 52 Tex. 534; Burgess v. Singer Mfg. Co. (Tex. Civ. App.) 30 S. W. 1110; Breneman v. West, 21 Tex. Civ. App. 19, 50 S. W. 471.

It follows from the conclusions above stated that the judgment of the trial court should be affirmed, and it has been so ordered.

Affirmed.