Larry STEPHENS, Appellant,

v.

**DELHI GAS PIPELINE CORPORATION, a Subsidiary of USX, Inc., Appellee.**

No. 06–95–00101–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 10, 1996.

Decided June 18, 1996.

Otis L. Carroll, Ireland, Carroll & Kelley, P.C., Tyler, Deborah J. Race, Tyler, for appellant.

Dean J. Schaner, Haynes & Boone, L.L.P., Houston, W.T. Allison, II, Allison & Bryan, Sulphur Springs, for appellee.

Before CORNELIUS, C.J., and GRANT, J.

## OPINION

CORNELIUS, Chief Justice.

Larry Stephens suffered a take-nothing summary judgment in his suit against Delhi Gas Pipeline Corporation for retaliatory discharge and defamation. He contends on appeal that summary judgment was improper because the summary judgment proof raised genuine issues of fact on all issues. Because we find that fact issues exist as to Delhi's discharge of Stephens as a result of his taking steps toward a workers' compensation claim, we reverse and remand the cause for trial.

Delhi terminated Stephens, a nineteen-year employee, in June of 1992. Delhi says it discharged Stephens because he violated the company's conflict of interest policy in that he used a company employee to install a gasket on his (Stephens') personal air compressor while on company time.

Stephens contends that Delhi terminated him because he developed a health problem from exposure to hydrogen sulfide gas on the job and was contemplating making a claim for workers' compensation benefits. Stephens says he began having blackouts at work and saw a doctor about the problem. He said the doctor told him the problem was associated with long-term exposure to hydrogen sulfide gas. Stephens says he reported the problem to company officials and that he eventually filed a safety hazard report to force the company to move his office. Stephens acknowledges that he asked Frank Lott, a company mechanic, to install the gasket for him, but that it was customary for Delhi employees to perform small tasks for other employees, and that the company had never before discharged anyone for it. He says the company really fired him because of his health problems and his potential claims against the company.

Stephens filed suit, alleging libel and slander and retaliatory discharge. Tex.Rev.Civ. Stat.Ann. art. 8307c.[1] Delhi removed the case to federal court, where the court granted Delhi's summary judgment motion as to

certain Employee Retirement Security Act claims and remanded the case to state court. Delhi then filed an amended summary judgment motion. After a hearing, the court granted Delhi's motion on the defamation claim but not on the retaliatory discharge claim. Delhi sought a rehearing in light of the recently decided case of *Texas Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629 (Tex.1995). On rehearing, the court granted Delhi's motion as to all claims.

■ A summary judgment is proper for a defendant only if the defendant establishes that no genuine issue of material fact exists as to one or more essential elements of the plaintiff's claims and that it is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *see Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). The movant has the burden of proof, and all doubts are resolved in favor of the nonmovant. *Roskey v. Texas Health Facilities Comm'n*, 639 S.W.2d 302, 303 (Tex.1982). The reviewing court will take all evidence favorable to the nonmovant as true, *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986), and will indulge every reasonable inference and resolve any reasonable doubt in the nonmovant's favor. *Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex.1988). A reviewing court cannot affirm a summary judgment on any grounds not presented in the summary judgment motion. *Hall v. Harris County Water Control & Improvement Dist.*, 683 S.W.2d 863, 867 (Tex.App.—Houston [14th Dist.] 1984, no writ). When the trial court's order does not specify the grounds it relied on for its ruling, the reviewing court will affirm the judgment if any theory advanced in the motion is meritorious. *Insurance Co. of N. Am. v. Security Ins. Co.*, 790 S.W.2d 407, 410 (Tex.App.—Houston [1st Dist.] 1990, no writ).

Stephens alleges that Delhi's management defamed him by telling employees and non-employees that he had been fired for theft. Delhi contends that Stephens' cause of action for defamation was properly foreclosed because it did not publish the defamatory state-

---

1. Act of April 22, 1971, 62nd Leg., ch. 115, 1971 Tex.Gen.Laws 884, *repealed by* Act of May 12, 1993, 73rd Leg., ch. 269, § 5(1), 1993 Tex.Gen. Laws 1273, and *recodified as* Tex.Lab.Code Ann. § 451.001, et seq. (Vernon 1996).

ments, the statements were true, Stephens voluntarily disclosed the statements to third parties, the statements were privileged, and the statements were constitutionally protected.

Actionable slander is a defamatory statement orally communicated or published to a third person without legal excuse. *Ramos v. Henry C. Beck Co.,* 711 S.W.2d 331, 333 (Tex.App.—Dallas 1986, no writ); *Bergman v. Oshman's Sporting Goods, Inc.,* 594 S.W.2d 814, 815 (Tex.Civ.App.—Tyler 1980, no writ); 50 Tex.Jur.3d *Libel and Slander* § 3 (1986).

Stephens said in his affidavit that Delhi managers Alex Bucher and Bryan Boulter discussed his firing with other unnamed Delhi employees. "I believe they were accusing me of theft," he said. The affidavit does not clearly indicate whether Stephens had first-hand knowledge of what Bucher and Boulter said and that he construed their statements as defamatory, or whether he had only hearsay knowledge of what the two said. He also said that an unnamed person told him that Greg Travelstead, a Delhi construction foreman, told non-Delhi personnel that "Larry Stephens was fired because Delhi considered him a thief for padding his auto expense report." Stephens also said that Lott, the mechanic who installed the gasket, told him that Delhi manager Kerry Puckett had ordered him to write a letter about the incident and accuse Stephens of theft of company time, or he would be fired.

Delhi correctly points out that Stephens' belief about what was said is not competent summary judgment evidence because it does not constitute personal knowledge and it does not set forth facts that would be admissible in evidence. Tex. R.Civ.P. 166a(f); *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984).[2]

Delhi acknowledges that it passed information about Stephens' firing on to certain managers, but claims that this did not constitute publication. Among the people at Delhi with

knowledge of the reason for Stephens' firing were Puckett and John Snider, Stephens' supervisors; Snider's supervisor, Bucher; Bucher's supervisor, Boulter; director of human resources, Ted Rodgers; executive vice-president, Gene Gradick; and senior vice-president and general counsel, William Schwind.

This defense, however, goes more to the question of legal excuse than to publication. *Ramos v. Henry C. Beck Co.,* 711 S.W.2d at 335; *see Montgomery Ward & Co. v. Peaster,* 178 S.W.2d 302, 305–06 (Tex.Civ. App.—Eastland 1944, no writ). Statements are published, even if they are made only to other employees or managers, but they are generally privileged unless they are made with malice.

Delhi also claims the truth of the statements as a defense. The truth of a communication is a defense to a defamation action. *Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs.,* 925 F.2d 866, 878 (5th Cir.), *cert. denied,* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991); *Davis v. West Community Hosp.,* 755 F.2d 455, 456 (5th Cir.1985). The statement need not be literally true in every detail; substantial truth is sufficient to establish the defense. *Howell v. Hecht,* 821 S.W.2d 627, 631–32 (Tex.App.—Dallas 1991, writ denied).

Stephens concedes in his deposition that he ordered an air compressor part for his personal use on a Delhi account and that he used company personnel on company time for his own use. In 1982 Stephens signed a conflict of interest policy agreement with Delhi's parent company, Texas Oil and Gas Corporation, called "TXO." TXO eventually was dissolved, and Delhi became a subsidiary of USX, Inc., formerly U.S. Steel. The policy Stephens signed prohibited an employee from using company time, facilities, equipment, materials, or supplies for his own personal convenience or profit. Delhi says

---

**2.** Although Delhi notes that Stephens does not specifically avow firsthand knowledge of anyone at the company calling him a "thief," whether a hearer could reasonably understand the statement as defamatory is a fact question. *Ramos v.*

*Henry C. Beck Co.,* 711 S.W.2d 331, 334 (Tex. App.—Dallas 1986, no writ). Delhi did not argue before the trial court that any statements made were not defamatory.

that TXO was dissolved in 1991, before the incident, and that it (Delhi) implemented its own more general ethical code. Delhi personnel coordinator Keith Huffman said in an affidavit, however, that this latter code did not supersede the TXO corporate policy manual, including the conflict of interest policy, which Delhi continued to use through October 7, 1992, after the incident. Stephens says that the new Delhi code did not contain a provision barring the same specific conduct prohibited by the former TXO policy. Although the appellate record does not contain the relevant portion of the new code, Delhi does not controvert this assertion. It says only that the old code still was in effect. Stephens also relates three incidents when employees using company time transacted personal work or business, and Delhi did nothing about it.

Although Huffman said the TXO policy was still in effect after Delhi moved from TXO to USX, Stephens' firsthand knowledge of others doing personal chores on company time raises an inference that the earlier more-specific TXO policy was no longer in effect, or if it was in effect, it was not enforced. Even though Stephens does not directly controvert Huffman's statement, this inference creates a fact issue about whether the policy was in effect. Because we must indulge every reasonable inference in Stephens' favor, we conclude that the summary judgment evidence raises a fact issue as to the truth defense, that is, as to whether Stephens had in fact violated a valid, operating company policy.

As for any slander involving the use of the word "thief," Stephens offers no firsthand proof that anyone in the company called him a thief. The company says it did discuss the reasons for his firing with managers, however. The accusations involved violating company policies in ways that a reasonable person could take as defamatory. *St. Clair v. First Nat'l Bank of Ingleside*, 422 S.W.2d 558, 561 (Tex.Civ.App.—Corpus Christi 1967, no writ); 50 TEX.JUR.3d *Libel and Slander* § 35 (1986).

Delhi also contends that Stephens' voluntary self-publication of the reasons for his firing bars his slander claim. *See Lyle v.*

*Waddle*, 144 Tex. 90, 188 S.W.2d 770, 772 (1945).

Puckett and Snider told Stephens about his firing in a private meeting and then discussed the reasons for his firing with five Delhi managers. Stephens concedes that he discussed his firing and the purported reasons with several other persons. Delhi says this self-publication bars his action.

▮ In *Lyle v. Waddle, supra,* the plaintiff was seeking damages for information that she herself relayed in a letter from her former treating physician to a later treating physician. She sought damages for publication to the very person to which she gave the information. That is not the situation here. Stephens is seeking damages for publication of the defamatory information to third parties not of his choosing. His publication of the information to his own friends and confidants does not bar his suit, but it might be relevant to mitigation of damages, if he recovers damages.

Delhi says also that the managers' statements were opinions, not facts, and are thus protected by the First Amendment to the United States Constitution and article I, section 8 of the Texas Constitution. *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex.1989). Whether a statement is an opinion or a statement of fact is a question of law. *Id.* at 569–70. Delhi managers said they terminated Stephens for violating company policy. This is an assertion of fact—that he violated company policy—not an opinion that he was unqualified.

▮ Delhi contends that its statements were privileged. Accusations or comments about an employee by his employer, made to a person having a corresponding interest or duty in the matter to which the communication relates, have qualified privilege. *See Schauer v. Memorial Care Sys.*, 856 S.W.2d 437, 449 (Tex.App.—Houston [1st Dist.] 1993, no writ); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 572–73 (Tex. App.—Dallas 1989, no writ). Whether a qualified privilege exists is a question of law. *Martin v. Southwestern Elec. Power Co.*, 860 S.W.2d 197, 199 (Tex.App.—Texarkana 1993, writ denied).

█ Delhi's summary judgment proof shows that it gave the reasons for Stephens' firing only to company managers. Stephens' only summary judgment proof that Delhi published the information to other than company managers is hearsay or speculation and does not constitute competent summary judgment evidence. Thus, Delhi's statements are protected by qualified privilege.

█ Where publication is qualified, the claimant can overcome the privilege only by showing that the defendant acted with actual malice. *Bergman v. Oshman's Sporting Goods, Inc.*, 594 S.W.2d at 816 n. 1. Actual malice in a defamation action means publication of a statement with knowledge that it is false, or with reckless disregard of whether it is true. *See Procter & Gamble Mfg. Co. v. Hagler*, 880 S.W.2d 123, 126 (Tex.App.—Texarkana), *writ denied per curiam*, 884 S.W.2d 771 (Tex.1994); *Schauer v. Memorial Care Sys., supra; Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 630 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). In connection with a summary judgment, when the defamation defendant offers evidence that is "clear, positive and direct," even from an interested witness, as to the lack of actual malice, the plaintiff must offer controverting proof to establish a fact issue as to malice to avoid summary judgment. *See Casso v. Brand*, 776 S.W.2d 551, 558 (Tex.1989).

█ Puckett said in an affidavit that he investigated a suspicious gasket invoice after being alerted by an employee. Snider and Puckett said Delhi managers discussed the situation among themselves. They also said that when they fired Stephens, they told him he was being fired for violating company policy and did not otherwise disparage him. Stephens admitted in his deposition that Snider and Puckett did not otherwise disparage him, but told him they were firing him for violating company policy in connection with the gasket purchase and installation. Puckett said he based his recommendation that

Stephens be fired only on his investigation of the gasket invoice, his conversation with Stephens during a June 16, 1992 performance review, and Lott's statement that Stephens had asked Lott to perform work for Stephens during company time.

Stephens relies on evidence that other employees had performed personal chores on company time without being fired and on his belief that the TXO policy forbidding such work was no longer in effect, to raise an inference that Delhi managers acted with malice.

█ Although this evidence raises an inference that Stephens' termination was in retaliation for his potential workers' compensation claim, it does not rise to the level of raising an issue that Delhi managers knew their statements were false or made them with reckless disregard of the truth.[3]

Stephens presented no competent summary judgment evidence that Delhi managers published information to people not covered by the qualified privilege, and he failed to raise a fact issue on the question of actual malice.

Stephens also contends that the trial court erred in granting summary judgment against him on his retaliatory discharge claim.

█ An employer may not discharge an employee who has filed a workers' compensation claim, hired an attorney to represent him in a claim, or instituted or caused to be instituted a workers' compensation proceeding. Tex.Rev.Civ.Stat.Ann. art. 8307c, § 1 (repealed 1993, now Tex.Lab.Code Ann. § 451.001). The Legislature's purpose in enacting this law was to protect people who are entitled to benefits under the workers' compensation law and to prevent employers from firing them for taking steps to collect benefits. *Carnation Co. v. Borner*, 610 S.W.2d 450, 453 (Tex.1980). It is not necessary for a worker to have actually filed a workers' compensation claim to invoke the statutory pro-

---

3. At trial, a court may properly direct a verdict for the defendant where the plaintiff offers no evidence tending to show actual malice, *Rogers v. Industrial Rice Mills*, 292 S.W. 944 (Tex.Civ. App.—Galveston 1927, no writ), or where the plaintiff's evidence does no more than create a mere surmise or suspicion that malice existed, *Tyler Commercial College v. Lattimore*, 12 S.W.2d 680, 686 (Tex.Civ.App.—Texarkana 1929), *rev'd on other grounds*, 24 S.W.2d 361 (Tex.Comm'n App.1930, judgment adopted); 50 Tex.Jur.3d *Libel and Slander* § 56 (1986).

tection; he needs only to take steps toward instituting a compensation proceeding to be protected. *Gauthreaux v. Baylor Univ. Medical Ctr.*, 879 F.Supp. 634, 639 (N.D.Tex. 1994). Informing one's employer of an on-the-job injury sufficiently "institutes" a compensation proceeding within the meaning of the law. *Id.* (citing *Palmer v. Miller Brewing Co.*, 852 S.W.2d 57, 61 (Tex.App.—Fort Worth 1993, writ denied)).

■ Snider and Puckett both said in affidavits that Delhi fired Stephens in June 1992 for violating company policy, not because he had taken steps toward instituting a compensation proceeding. Both Snider and Puckett said that Stephens had not told them of any job-related health problems. In his deposition, Stephens said he told Puckett and employee Jordan that he had been exposed to hydrogen sulfide gas on the job and that he suspected the exposure was responsible for his blackouts. He said he was first exposed to the gas in about 1984. The record is not clear about when Stephens most recently registered a health complaint with a company official. He said he went to Dr. Malcolm Stuart, who told him his health problems possibly could be related to hydrogen sulfide exposure. He also said he filed a safety hazard report after being exposed to hydrogen sulfide to persuade Delhi managers to move his office. Stephens said Dr. Kenneth Orten, Delhi's company doctor, had examined him annually and that for the past three or four years had told Stephens that he had an enlarged heart.

Puckett said in his affidavit that Stephens discussed the blackouts with him and that he had given Stephens permission to take time off work to consult with a Dallas doctor. Puckett said, however, that Stephens told him the blackouts were related to a sleeping disorder.

Delhi argues that Stephens took no steps to pursue a workers' compensation claim and that he conceded that his health complaints were not work related. Stephens, on the other hand, says he told Puckett and Jordan about his gas exposure and that he discussed his enlarged heart with the company doctor. Stephens stated in his deposition that his conditions were not work related, but that is a layman's conclusion about a medical diagnosis and is not dispositive of the issue.

Delhi also says Texas courts have prescribed a shifting burden scheme in retaliatory discharge cases. It argues that Stephens must produce competent evidence of a causal link between his discharge and the pursuit or filing of a workers' compensation claim, *Investment Properties Management, Inc. v. Montes*, 821 S.W.2d 691, 694 (Tex.App.—El Paso 1991, no writ), and if he establishes such a causal link, only then must Delhi articulate a legitimate reason for his discharge. *Id.* Stephens has the ultimate burden of proof. Tex.Rev.Civ.Stat.Ann. art. 8307c, § 2 (repealed 1993, now Tex.Lab.Code Ann. § 451.002(c)).

Delhi's arguments about shifting burdens and standards of causation do not apply here because in this summary judgment action Delhi has the burden to conclusively negate one or more of the essential elements of Stephens' cause of action. If Delhi does so, then Stephens must controvert Delhi's evidence to show that a genuine issue of material fact exists.

Delhi relies on the case of *Texas Dep't of Human Servs. v. Hinds*, 904 S.W.2d at 636, where the Supreme Court said that, in connection with the Texas Whistleblower Act, the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did. Delhi argues that this standard of causation should apply to wrongful discharge cases as well.

Stephens said he told his supervisors about the gas exposure and he and the company doctor discussed his heart condition. We think that the summary judgment evidence that Stephens told his supervisors about his exposure to gas on the job, and his related health problems, at least raises an inference that Delhi discharged him because of his potential workers' compensation claim. Because Stephens raised sufficient controverting evidence to raise a fact issue on this point, summary judgment on the retaliatory discharge claim was error.

Summary judgment was proper on the defamation cause of action, but not on the claim

of retaliatory discharge. The judgment, so far as it applies to the defamation claim, is affirmed. The cause of action for retaliatory discharge, being clearly separable from the defamation claim, is severed. The judgment as to retaliatory discharge is reversed and the cause is remanded to the trial court for trial. Tex.R.App.P. 81(b)(1).

So ordered.