

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00040-CV

———————————————————

AMY LYNN HANSON, Appellant

V.

CARL JOHNSON AND PATRICIA JOHNSON, Appellees

---

On Appeal from the 467th District Court
Denton County, Texas
Trial Court No. 22-7701-467

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

This is an interlocutory appeal from the denial of Appellant Amy Lynn Hanson's motions to dismiss under the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.008(b), 51.014(a)(12). Hanson contends that the trial court abused its discretion by (1) denying her TCPA motion to dismiss the defamation claim against her and (2) rejecting as untimely her TCPA motion to dismiss the invasion of privacy claim against her.[1] We will affirm the first ruling and reverse and remand the second.

## I. Background

This case stems from a confrontation at a neighborhood pool between Hanson and Appellees Carl and Patricia Johnson. The parties agree that the confrontation occurred, but they disagree how and why it occurred.

According to Hanson, during the incident Hanson "expressed [her] concerns about . . . the welfare of the Johnson[s'] minor children" because "the behaviors and interactions [she] ha[d] witnessed . . . caused [her], and the community, to question the[ir] safety." She claims that she did not speak to or interact with the Johnsons again after that date but that she saw the Johnsons post about the confrontation on a neighborhood Facebook page.

---

[1]Hanson raises a third issue as well: the trial court's denial of her invasion of privacy claim on the merits. But as both parties acknowledge, the trial court did not reach this issue.

The Johnsons remember things differently. They allege that during the incident, Hanson pointed her finger at them and screamed—within earshot of approximately 25 people—"You sex-traffic your children!"

The Johnsons also dispute Hanson's contention that she did not interact with them after the pool incident. They claim that, after the confrontation, Hanson began yelling and screaming at them in public, making catcalls to taunt them in public, driving past their home while revving her engine and spinning her tires, and engaging in similar harassing behavior.

Based on these interactions, the Johnsons sued Hanson for defamation[2] and invasion of privacy.[3] Their original petition alleged that Hanson defamed them by publicly accusing them of "engaging in the sex trafficking trade with their children" and that Hanson invaded their privacy with her engine-revving, catcalls, and similar harassing behavior. Hanson moved to dismiss the defamation claim under the TCPA. *See id.* § 27.003(a).

---

[2]The Johnsons pleaded their defamation claim in two forms: as defamation and defamation per se. But in their subsequent depositions, they confirmed that they are relying on just one defamatory statement.

[3]There are two torts related to the invasion of privacy, and one of those is intrusion upon seclusion. *Roberts v. CareFlite*, No. 02-12-00105-CV, 2012 WL 4662962, at *3 (Tex. App.—Fort Worth Oct. 4, 2012, no pet.) (mem. op.). "The tort of intrusion upon seclusion has two elements: '(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person.'" *Id.* (quoting *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993)).

Not long after Hanson filed her motion to dismiss, the Johnsons amended their petition to add a new cause of action, several new defendants (Hanson's alleged coconspirators), and allegations that Hanson's privacy-violating behavior included making repeated calls to the police. Although Hanson had already set her motion to dismiss for a hearing, *see id.* §§ 27.003(d), .004, she moved for a two-week continuance of that hearing, in part to allow her time to conduct limited discovery on the TCPA issues.[4] The trial court granted the motion and rescheduled the hearing.

Then, six days before the rescheduled hearing, Hanson filed a self-described "supplement[]" to her original motion to dismiss in response to the Johnsons' amended petition. [Capitalization altered.] The document (1) attached new evidence to support her dismissal motion related to the defamation action[5] and (2) sought, for the first time, to dismiss the Johnsons' invasion of privacy claim under the TCPA. As the Johnsons quickly pointed out, the latter part of this filing was not a supplement but rather a new privacy-related motion to dismiss.

The Johnsons objected to the privacy-related motion to dismiss as untimely because it was filed more than 60 days after Hanson had been served with the

---

[4]Hanson's lead counsel also candidly conceded that he had a personal scheduling conflict on the date of the hearing.

[5]The Johnsons objected to the new evidence because it was filed just six days before the rescheduled hearing. The trial court did not rule on the objection. Although the parties discuss this issue on appeal—arguing whether the supplemental evidence was considered by the trial court—the issue is not dispositive so we need not resolve it. *See* Tex. R. App. P. 47.1; *infra* note 10.

Johnsons' original petition. *Cf. id.* § 27.003(b). They also objected to the inclusion of this motion in the upcoming hearing because, they argued, they were entitled to 21 days' notice and an opportunity to respond. *See id.* § 27.003(d), (e).

The trial court heard the Johnsons' objections at the hearing, and at the conclusion of that hearing, the court denied Hanson's defamation-related dismissal motion, and it "f[ound] that the intrusion on seclusion [i.e., privacy-related] anti-SLAPP motion was not timely filed in this matter." These rulings were later reduced to writing,[6] and Hanson appeals. *See id.* §§ 27.008(b), 51.014(a)(12).

## II. Standard of Review and Governing Law

The TCPA—commonly referred to as Texas's anti-SLAPP statute[7]—is intended to "protect[] citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding); *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.002 (summarizing TCPA's purpose as "encourag[ing] and safeguard[ing] the constitutional rights of persons . . . and, at the same time, protect[ing] the rights of a person to file meritorious lawsuits for demonstrable injury").

---

[6]The trial court signed an order sustaining the Johnsons' objections to the privacy-related motion to dismiss, and it signed a separate order denying the motions to dismiss without specifying a basis for its judgment.

[7]SLAPP stands for strategic lawsuit against public participation. *See Windsor v. Round*, 591 S.W.3d 654, 658 (Tex. App.—Waco 2019, pet. denied).

A party who moves for dismissal under the TCPA invokes a three-step, burden-shifting process: (1) first, the movant seeking dismissal must demonstrate that a "legal action" has been brought against it and that the action is "based on or is in response to" an exercise of a protected constitutional right; (2) then the burden shifts to the party bringing the legal action to avoid dismissal by establishing, by clear and specific evidence, a prima facie case for each essential element of the claim in question; and (3) finally, the burden shifts back to the movant to justify dismissal by establishing an affirmative defense or other ground on which it is entitled to judgment as a matter of law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)–(d); *Miller v. Schupp*, No. 02-21-00107-CV, 2022 WL 60606, at *1 (Tex. App.—Fort Worth Jan. 6, 2022, no pet.) (mem. op.).

We review a trial court's ruling on a TCPA motion to dismiss—including its determination of the parties' satisfaction of their respective burdens—de novo. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021); *Miller*, 2022 WL 60606, at *1–2. Our review encompasses "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based," and we view all of these in a light most favorable to the nonmovant. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *see Maggret v. Ramsey's Rods & Restoration*, No. 02-20-00395-CV, 2021 WL 2253244, at *2 (Tex. App.—Fort Worth June 3, 2021, no pet.) (mem. op.).

## III.  Discussion

On appeal, Hanson challenges the trial court's denial of her defamation-related motion to dismiss on the merits and its rejection of her privacy-related motion to dismiss as untimely.[8]

## A.    Defamation

Hanson contends that the trial court erred by denying her defamation-related motion to dismiss because (1) she carried her step-one burden to show that the Johnsons' defamation claim was based on or in response to her exercise of her right of free speech, (2) the evidence of self-publication undermined the Johnsons' ability to establish a prima facie case for each element of defamation under step two, and (3) even if the Johnsons had established a prima facie case, Hanson satisfied step three by conclusively proving self-publication as an affirmative defense.

### 1.       Hanson's alleged speech involved a matter of public concern.

To carry her burden under the first step of the TCPA analysis, Hanson was required to establish that the Johnsons had filed "a legal action [against her] . . . based on or . . . in response to [her] exercise of [her] right of free speech." Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a).  The parties do not dispute that the Johnsons' lawsuit

---

[8]Hanson also challenges the trial court's denial of her privacy-related motion to dismiss on the merits.  But as she acknowledges, the trial court denied the privacy-related motion as untimely, and there is no indication that the trial court ruled on the motion's merits.

constitutes a "legal action," but they dispute whether the lawsuit is based on or in response to Hanson's exercise of her right of free speech.

The TCPA defines the "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). A "[m]atter of public concern," in turn, is defined to include "a statement or activity regarding . . . a subject of concern to the public." *Id.* § 27.001(7)(C).

The Johnsons' lawsuit is based on Hanson's alleged statement that they "engag[e] in the sex trafficking trade." Sex trafficking is a criminal offense. *See* Tex. Penal Code Ann. § 20A.02. And as Hanson points out, there is ample case law—including from this court—holding that the commission of a crime is a matter of public concern. *See Miller*, 2022 WL 60606, at *2 (reiterating that "[p]ublic-concern matters include statements regarding the commission of a crime" and holding that statement alleging physical abuse involved matter of public concern for TCPA purposes); *Kadow v. Grauerholz*, No. 02-20-00044-CV, 2021 WL 733302, at *3–4 (Tex. App.—Fort Worth Feb. 25, 2021, no pet.) (mem. op.) (holding statement that plaintiff "[wa]s being criminally investigated for fraud, elder abuse, misappropriation of funds, theft, and kidnapping" involved matters of public concern under TCPA); *Weber v. Fernandez*, No. 02-18-00275-CV, 2019 WL 1395796, at *6 (Tex. App.—Fort Worth Mar. 28, 2019, no pet.) (mem. op.) (holding statements involved matters of public concern for TCPA purposes in part because statements "related to the charge and prosecution of [the plaintiff] for the crime of theft while he was a city

8

councilmember"); *Campbell v. Clark*, 471 S.W.3d 615, 623–24 (Tex. App.—Dallas 2015, no pet.) (holding statements concerning child molestation and government corruption involved matters of public concern in TCPA case); *cf. Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) (recognizing that the "commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions" are matters of public concern for purposes of defamation claim against media defendant).

The Johnsons do not address or distinguish this case law. Instead, they argue that because Hanson denied accusing them of sex trafficking, she offered no evidence of the content of her defamatory statement.[9]

But a defendant need not admit to making the allegedly defamatory statement to demonstrate that the defamation claim against her is based on or in response to her exercise of her right of free speech. *See Hersh v. Tatum*, 526 S.W.3d 462, 463, 467 (Tex. 2017) (holding that a defendant may obtain a TCPA dismissal of a suit alleging a communication made in connection with a matter of public concern even if the plaintiff denies making the alleged statement). "The basis of a legal action [for TCPA purposes] is not determined by the defendant's admissions or denials but by the

---

[9]The Johnsons also contend that "yelling heinous allegations in public for neighbors and residents to hear is not speech worthy of protection partly because the allegations are not only heinous, they are false." But determining what speech is "worthy" of the TCPA's protection is a policy determination for the legislature. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011) ("It is the Legislature's prerogative to enact statutes; it is the judiciary's responsibility to interpret those statutes . . . .").

plaintiff's allegations." *Id.* at 467. The Johnsons' own pleadings identify the alleged statement on which their defamation claim is based: Hanson's "statements that [the Johnsons] are engaged in criminal activity by engaging in the sex trafficking trade with their children."[10] This alleged sex-trafficking statement, if Hanson made it, was a communication involving criminal activity—a matter of public concern. *See Miller*, 2022 WL 60606, at *2. And again, "a communication made in connection with a matter of public concern" is an "[e]xercise of the right of free speech" under the TCPA. Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3).

The Johnsons' own pleadings thus showed that their defamation claim was covered by the TCPA, and Hanson was not required to show anything more to satisfy step one of the TCPA analysis. *See Hersh*, 526 S.W.3d at 467 ("When it is clear from

---

[10]Hanson also filed the Johnsons' depositions as evidence. In the depositions, the Johnsons testified that Hanson defamed them by making the statement that "[they] put in the petition," which they summarized as, "That we sex-traffic our children." They confirmed that there were no other statements that Hanson made that they contended were defamatory.

Although the Johnsons argue that this evidence was untimely because it was filed just six days before the hearing, the trial court did not expressly rule on the Johnsons' evidentiary objections, and the Johnsons do not claim that the record reflects a clear implied ruling *See* Tex. R. App. P. 33.1(a)(2)(A); *cf. Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (noting that objections to summary judgment evidence may be implicitly ruled on if the implication is clear). Hanson thus contends that the Johnsons' evidentiary objections were waived. *See* Tex. R. App. P. 33.1(a)(2)(A).

Either way, the issue is not dispositive, so we need not resolve it. *Cf.* Tex. R. App. P. 47.1 (providing that opinion need address only issues raised and necessary to final disposition).

the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more."); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1)(A). Unless the Johnsons satisfied step two, Hanson was entitled to a dismissal of the defamation claim against her. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b), (c).

### 2. The Johnsons established a prima facie case for defamation.

But the Johnsons did satisfy step two by establishing a prima facie case for defamation.

Generally, plaintiffs asserting a defamation claim may avoid dismissal under the TCPA if they offer clear and specific evidence of (1) the publication of a false fact statement to a third party, (2) that defamed the plaintiffs, (3) that was made with the requisite degree of fault, and (4) that caused damages. *Lipsky*, 460 S.W.3d at 593; *Miller*, 2022 WL 60606, at \*3; *see Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (noting that a plaintiff's establishing "when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff" is generally sufficient to avoid TCPA dismissal). If the false statement of fact is defamatory per se, though, the plaintiffs need not offer evidence of damages to survive dismissal. *Lipsky*, 460 S.W.3d at 593; *Miller*, 2022 WL 60606, at \*3. And accusing someone of a crime constitutes defamation per se. *Lipsky*, 460 S.W.3d at 596 (giving as examples of defamation per se "[a]ccusing someone of a crime . . . or of engaging in serious sexual misconduct"); *Miller v. Watkins*, No. 02-20-00165-CV, 2021 WL 924843, at \*18 (Tex. App.—Fort Worth Mar. 11, 2021, no pet.) (mem. op.) (quoting *Lipsky*).

11

Here, then, because Hanson's alleged statement accused the Johnsons of sex trafficking—a criminal offense—the statement constituted defamation per se. *See Lipsky*, 460 S.W.3d at 596. This relieved the Johnsons of the burden to offer clear and specific evidence of damages; they were only required to offer evidence of (1) publication (2) defamation and (3) fault. *See Miller*, 2022 WL 60606, at \*3; *Watkins*, 2021 WL 924843, at \*19 ("[P]rima facie proof of a viable defamation per se claim frees the party responding to a TCPA motion to dismiss from having to present clear and specific evidence of general damages.").

Hanson only challenges the first element: publication. Citing *Exxon Mobil Corp. v. Rincones*, Hanson argues that the Johnsons' voluntary self-publication of the allegedly defamatory statement on Facebook undermined the publication element of their defamation claim. *See* 520 S.W.3d 572, 579–83 (Tex. 2017).

But *Rincones* is not on point. There, the plaintiff relied on his own (allegedly compelled) self-disclosure to satisfy the publication element of his defamation claim. *See id.* at 579. The Texas Supreme Court rejected this proposed exception to the publication element and "expressly decline[d] to recognize a theory of compelled self-defamation in Texas." *Id.* at 579–83 (reaffirming general rule that "a defendant who communicates a defamatory statement directly to the defamed person, who then relays it to a third person, has not published the matter to the third person").

The Johnsons, in contrast, do not claim that they were damaged by their own reiteration of Hanson's alleged sex-trafficking statement, and they do not rely on their

12

Facebook post to satisfy the publication element. In fact, their petition makes no mention of their Facebook post. Rather, they allege that Hanson published the statement to third parties by yelling it at the pool, and they seek to recover for damages stemming from this alleged publication. *See Stephens v. Delhi Gas Pipeline Corp.*, 924 S.W.2d 765, 770 (Tex. App.—Texarkana 1996, writ denied) (holding plaintiff's slander claim was not barred by self-publication because plaintiff was "seeking damages for publication of the defamatory information to third parties not of his choosing" rather than damages for his own "publication of the information to his own friends and confidants").

Because Hanson does not dispute that the Johnsons established a prima face case for the other elements of their defamation per se claim, the Johnsons carried their burden on step two, and the trial court could not dismiss the case unless Hanson satisfied step three of the TCPA analysis. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c), (d).

### 3. Hanson did not conclusively establish a defense to defamation.

Hanson did not satisfy step three. To justify dismissal in the face of the Johnsons' prima facie case, Hanson was required to conclusively establish all elements of an affirmative defense to defamation "or other grounds on which [she wa]s entitled to judgment as a matter of law." *See id.* § 27.005(d). On appeal, the only affirmative defense Hanson even vaguely alludes to is self-publication.

13

In the portion of her brief dedicated to step two—not step three—Hanson offhandedly states that "[e]ither the uncompelled self-defamation caused the Johnsons to fail to carry their burden of proving defamation [under step two], or it is a valid affirmative defense [under step three]." Her analysis of self-publication as an alleged affirmative defense is limited to this single phrase of this single sentence. *Cf. Kadow v. MAA, Watermark*, No. 02-22-00038-CV, 2022 WL 17841131, at *6 (Tex. App.—Fort Worth Dec. 22, 2022, no pet.) (mem. op.) (holding appellant inadequately briefed issue addressed in single sentence); *Ellis v. Dall. Area Rapid Transit*, No. 02-19-00224-CV, 2021 WL 126370, at *5 n.9 (mem. op.) (Tex. App.—Fort Worth Jan. 14, 2021, pet. denied) (similar); *Wise Cnty. v. Mastropiero*, No. 02-18-00378-CV, 2019 WL 3755766, at *8 (Tex. App.—Fort Worth Aug. 8, 2019, no pet.) (mem. op.) (similar). She does not cite any case law recognizing self-publication as an affirmative defense, nor does she list the elements of this alleged defense, nor does she enunciate how her evidence conclusively established those elements. *Cf. Kadow*, 2022 WL 17841131, at *6 (holding appellant inadequately briefed issue when she did not "present[] us with a standard of review, point[] to any evidence from the record, or engage[] in substantive analysis to support her argument"); *Mastropiero*, 2019 WL 3755766, at *8 (holding appellants inadequately briefed issue when they failed to provide "any citations to the record or to legal authority").

Perhaps this is because self-publication is not itself an affirmative defense. *See Rincones*, 520 S.W.3d at 583 (noting that court of appeals misconstrued self-defamation

14

as an independent cause of action but that "it is probably better understood as an exception to the publication requirement of a standard defamation claim" and "modifies a plaintiff's burden on [that] element"); *Stephens*, 924 S.W.2d at 770 (concluding that plaintiff's subsequent self-publication of statement "might be relevant to mitigation of damages" but did not bar slander suit based on defendant's original publication to third parties).

Either way, Hanson has failed to show that the trial court erred under step three of the TCPA analysis. Since the Johnsons satisfied step two, the trial court did not abuse its discretion by denying Hanson's defamation-related motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). We overrule Hanson's first issue.

## B.    Privacy

In her second issue, Hanson argues that the trial court erred by denying her privacy-related motion to dismiss as untimely. Specifically, the Johnsons had objected because Hanson's privacy-related motion to dismiss was filed more than 60 days after Hanson was served with their original petition.[11]  The trial court agreed and found

---

[11]The Johnsons also objected that the privacy-related motion was filed just six days before the hearing, depriving the Johnsons of the 21 days' notice to which they were entitled. *Cf.* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(d). Hanson raises this issue on appeal, challenging it as an alternate basis for the trial court's ruling that her privacy-related motion was untimely.

But the trial court specifically stated that it was rejecting the privacy-related motion as "not timely filed in this matter," and the 21-day-notice requirement goes to the timeliness of the hearing rather than the timeliness of the motion's filing. *See id.*

that "the intrusion on seclusion [i.e., privacy-related] anti-SLAPP motion was not timely filed in this matter," and it denied the motion on that basis.[12]  Hanson claims that this was erroneous because, according to her, the Johnsons' first amended petition included changes that restarted the 60-day clock, making her privacy-related motion timely.[13]

Generally, "[a] motion to dismiss a legal action under [the TCPA] must be filed not later than the 60th day after the date of service of the legal action."[14]  *Id.* at § 27.003(b); *see Damti v. ACET Glob., LLC,* No. 05-21-00907-CV, 2022 WL 4719585,

---

Plus, neither party has asked us to address—much less analyzed or cited any case law regarding—a trial court's authority to deny a TCPA motion to dismiss based on the movant's request for a premature hearing on less than 21 days' notice.  *Cf. Leach v. Schwartz,* 645 S.W.3d 906, 912–13 (Tex. App.—El Paso 2022, no pet.) ("[T]he failure to hold the hearing on a timely basis [i.e., before the statutory deadline] is both a reason to deny the motion, and a reason to reverse the TCPA motion if granted."); *Wightman-Cervantes v. Hernandez,* No. 02-17-00155-CV, 2018 WL 798163, at *4 (Tex. App.—Fort Worth Feb. 9, 2018, pet. denied) (mem. op.) (emphasizing that, to be protected by the TCPA, "a party must comply with the statutory requirements to file a motion to dismiss, and to obtain a hearing on that motion, within the deadlines specified in the TCPA").

[12]The parties agree that the trial court denied the privacy-related motion based on its untimeliness.  Although portions of Hanson's brief appear to imply that the trial court reached the merits of the privacy-related motion as well, there is no indication that the trial court proceeded to the merits after rejecting the motion as untimely.

[13]The Johnsons do not address the 60-day issue at all in their brief.

[14]"The parties, upon mutual agreement, may extend the time to file a [TCPA dismissal] motion . . . or the court may extend the time to file a [TCPA dismissal] motion . . . on a showing of good cause," but Hanson does not allege that either extension applies here.  Tex. Civ. Prac. & Rem. Code Ann. § 27.003(b).

16

at *4 (Tex. App.—Dallas Oct. 3, 2022, pet. denied) (mem. op.) (affirming denial of untimely TCPA motion to dismiss); *see also Wightman-Cervantes*, 2018 WL 798163, at *4 (emphasizing that, to be protected by the TCPA, "a party must comply with the statutory requirements to file a motion to dismiss . . . within the deadlines specified in the TCPA"). But if an amended petition "(1) adds a new party or parties, (2) alleges new essential facts to support previously asserted claims, or (3) asserts new legal claims or theories involving different elements than the claims or theories previously asserted," then the amendment "asserts a new legal action [for purposes of the TCPA] and triggers a new sixty-day period as to those new parties, facts, or claims." *Montelongo v. Abrea*, 622 S.W.3d 290, 293–94 (Tex. 2021).

The Johnsons' first amended petition made quite a few changes,[15] but Hanson's appeal focuses on just one: the Johnsons' allegation that Hanson invaded their privacy by repeatedly calling the police.

The Johnsons' original petition said nothing regarding Hanson's calls to the police after the pool incident, nor did the original petition assert that such calls invaded the Johnsons' privacy. But the first amended petition alleged that Hanson "ha[d] multiple times called the police on the Johnsons, even when the Johnsons were in their backyard complying with all local, state, and federal laws"; that "the reason

---

[15]The first amended petition added several new defendants, a new paragraph of facts regarding the Johnsons' backyard fire pit, a new cause of action (conspiracy), and new details to support the Johnsons' invasion of privacy claim.

17

[Hanson] continue[d] to call the police [wa]s to intimidate and harass [the Johnsons]"; and that the police calls "intentionally intruded . . . upon [the Johnsons'] solitude, seclusion, or private affairs." In other words, the Johnsons' first amended petition added previously unmentioned, allegedly blameworthy conduct to the case, and the Johnsons pleaded this previously unmentioned conduct as a new factual basis for their invasion of privacy claim.

Because the allegations regarding Hanson's calls to the police were "new essential facts to support [the Johnsons'] previously asserted claim[]," *Montelongo*, 622 S.W.3d at 293–94, they triggered a new 60-day deadline for Hanson to challenge that portion of the Johnsons' invasion of privacy claim. Hanson's privacy-related motion to dismiss targeted these new allegations, and it is undisputed that the privacy-related motion was filed within 60 days of Hanson receiving service of the Johnsons' first amended petition. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(b).

Hanson's privacy-related motion to dismiss was thus filed within the 60-day deadline, and the trial court abused its discretion by rejecting it as untimely. We sustain Hanson's second issue and reverse the portion of the trial court's order denying Hanson's privacy-related motion as untimely.

## C. Remand

Although the parties agree that the trial court denied the privacy-related motion to dismiss as untimely, Hanson (in her third issue) urges us to proceed to the merits of the motion anyway.

18

But the trial court ruled without regard to the merits and before the Johnsons had an opportunity to file a response. In such a circumstance, "the appropriate remedy is to remand the case for further proceedings consistent with this opinion." *Reeves v. Harbor Am. Cent., Inc.*, 552 S.W.3d 389, 396 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (remanding case when trial court denied TCPA motion to dismiss without addressing merits and before nonmovant responded); *see Hearst Newspapers, LLC v. Status Lounge Inc.*, 541 S.W.3d 881, 893–94 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (remanding case when trial court denied TCPA motion to dismiss as untimely without addressing merits). We therefore decline to review the merits of the privacy-related motion, and we overrule Hanson's third issue.

## IV. Conclusion

We affirm the portion of the trial court's order denying Hanson's defamation-related motion to dismiss, reverse the portion denying Hanson's privacy-related motion to dismiss as untimely, and remand the privacy-related motion to dismiss to the trial court for further proceedings consistent with this opinion.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: May 25, 2023